UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------X
                                     :

In re                               :

                              :     Case No. 08-13555 (JMP)

LEHMAN BROTHERS     :

HOLDINGS INC., et al.,    :     Chapter 11

                              :

           Debtors.     :     (Jointly Administered)

                              :
---------------------------------------------------X

## NOTICE OF APPEAL

       Tracy Hope Davis, the United States Trustee for Region 2 (the "United States Trustee"),

appeals under 28 U.S.C. § 158(a) from the Memorandum Decision Granting Omnibus

Application for Payment of Fees and Reimbursement of Expenses Claimed by Individual

Members of Official Committee of Unsecured Creditors (the "Fee Decision") (ECF Doc. 34720)

entered in these cases on the 15th day of February, 2013.  A copy of the Fee Decision is attached

hereto.

       The names of all parties to the order appealed from and the names, addresses and

telephone numbers of their respective attorneys are as follows:


MILBANK, TWEED, HADLEY & McCLOY LLP
Attorneys for Official Committee of Unsecured Creditors
One Chase Manhattan Plaza
New York, NY 10005
Dennis F. Dunne, Esq.
Evan Fleck, Esq.
(212) 530-5000

GODFREY & KAHN, S.C.
Attorneys for Fee Committee
One East Main Street
Suite 500
Madison, WI 53701
Brady C. Williamson, Esq.
Katherine Stadler, Esq.
(608) 257-3911

COVINGTON & BURLING LLP
Attorneys for Wilmington Trust Company
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Michael B. Hopkins, Esq.
(212) 841-1000

LOEB & LOEB, LLP
Attorneys for Wilmington Trust Company
345 Park Avenue
New York, NY 10154
Walter Curchack, Esq.
(212) 407-4861

SULLIVAN & WORCESTER LLP
Attorneys for U.S. Bank National Association
One Post Office Square
Boston, MA 02109
Richard Hiersteiner, Esq.
Jeanne P. Darcey, Esq.
(617) 338-2800

SHIPMAN & GOODWIN LLP
Attorneys for U.S. Bank National Association
One Constitution Plaza
Hartford, CT 06103
Robert M. Borden, Esq.
(860) 251-5823

VINSON & ELKINS LLP
Attorneys for Shinsei Bank, Limited
666 Fifth Avenue
26th Floor
New York, NY  10103
Dov R. Kleiner, Esq.

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Attorneys for Bank of New York Mellon
25 Southampton Buildings
London, England WC2A 1AL
        and
30 Rockefeller Plaza
New York, NY 10112
Russell L. Reid, Jr., Esq.
Michael Ahrens, Esq.
(212) 634-3024

STROOCK STROOCK & LAVAN
Attorneys for Mizuho Corporate Bank, Ltd.
180 Maiden Lane
New York, NY  10038
Mark A. Speiser, Esq.
Sherry J. Millman, Esq.
(212) 806-5400

KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.
Attorneys for Elliott Management Corp.
551 Fifth Avenue
New York, NY 10176
Matthew J. Gold, Esq.
(212) 986-6000

GREENBERG TRAURIG LLP
Attorneys for Elliott Management Corp.
MetLife Building
200 Park Avenue
New York, NY  10166
John H. Bae, Esq.

ARENT FOX LLP
Attorneys for The Vanguard Group
1675 Broadway
New York, NY  10019
George Angelich, Esq.
(212) 484-3900

WEIL, GOTSHAL & MANGES LLP
Attorneys for the Debtors
767 Fifth Avenue
New York, NY 10153
Harvey R. Miller, Esq.
Garrett Fail, Esq.
(212) 310-8000

Dated: New York, New York
       March 1, 2013

                              Respectfully submitted,

                              TRACY HOPE DAVIS
                              UNITED STATES TRUSTEE

                              By:      /s/ Susan D. Golden
                                       Susan D. Golden
                                       Trial Attorney
                                       33 Whitehall Street, 21st Floor
                                       New York, New York 10022
                                       (212) 510-0500

FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | ) Case No. 08-13555 (JMP) |
| | ) |
| Debtors. | ) |
| | ) |

**MEMORANDUM DECISION GRANTING OMNIBUS APPLICATION FOR PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES CLAIMED BY INDIVIDUAL MEMBERS OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

OFFICE OF THE UNITED STATES TRUSTEE
*Attorneys for United States Trustee*
33 Whitehall Street
21st Floor
New York, NY 10004

      Susan Golden, Esq.
      Tracy Hope Davis, Esq.

MILBANK, TWEED, HADLEY & McCLOY LLP
*Attorneys for Official Committee of Unsecured Creditors*
One Chase Manhattan Plaza
New York, NY 10005

      Dennis F. Dunne, Esq.

GODFREY & KAHN, S.C.
*Attorneys for Fee Committee*
One East Main Street
Suite 500
Madison, WI 53701

Katherine Stadler, Esq.

COVINGTON & BURLING LLP
*Attorneys for Wilmington Trust Company*
The New York Times Building
620 Eighth Avenue

New York, NY 10018

    Michael B. Hopkins, Esq.

SULLIVAN & WORCESTER LLP
*Attorneys for U.S. Bank National Association*
One Post Office Square
Boston, MA 02109

    Richard Hiersteiner, Esq.
    Jeanne P. Darcey, Esq.

SHEPPARD MULLIN RICHTER & HAMPTON LLP
*Attorneys for Bank of New York Mellon*
25 Southampton Buildings
London, England WC2A 1AL

Four Embarcadero Center
17th Floor
San Francisco, CA 94111

    Russell L. Reid, Jr., Esq.
    Michael Ahrens, Esq.

KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.
*Attorneys for Elliott Management Corp.*
551 Fifth Avenue
New York, NY 10176

    Matthew J. Gold, Esq.

WEIL, GOTSHAL & MANGES LLP
*Attorneys for the Debtors*
767 Fifth Avenue
New York, NY 10153

    Harvey Miller, Esq.

JAMES M. PECK
United States Bankruptcy Judge

## Introduction and Analytical Overview

These historic bankruptcy cases have been characterized by professional excellence and creative problem solving leading to negotiation, cooperation and the ultimate compromise of conflicting positions. One commendable administrative achievement is that professional fees for estate professionals have been managed so smoothly in uncontested proceedings. Disputes relating to the approval of these fees have been resolved and have not burdened the Court. That is a remarkable feat given the sheer magnitude of the professional activities and associated fees and expenses that together exceed $1.8 billion.

Efficient and fair handling of fee allowance procedures has resulted in an unbroken pattern of uncontested applications for compensation of the retained professionals. Even applications based on substantial contribution claims have been approved without controversy.[1]

---

[1] *See* Application of the Ad Hoc Group of Lehman Brothers Creditors for Compensation for Professional Services Rendered by, and Reimbursement of Actual and Necessary Expenses of, Its Professionals Pursuant to Section 503(b) of the Bankruptcy Code, ECF No. 29195; Application of the Ad Hoc Group of Holders of Notes Issued by Lehman Brothers Treasury Co. B.V. and Guaranteed by Lehman Brothers Holdings, Inc., Pursuant to 11 U.S.C. § 503(b) for Allowance of Administrative Expenses for Counsel's Services Incurred in Making a Substantial Contribution in These Cases, ECF No. 29222; Lehman Brothers Special Financing Inc. Working Group's Application for Entry of an Order, Pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) for Allowance and Reimbursement of Reasonable Professional Fees and Actual, Necessary Expenses in Making a Substantial Contribution in these Cases, ECF No. 29239; Application of Goldman Sachs Bank USA and Goldman Sachs International for Entry of an Order Pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) for Allowance and Reimbursement of Reasonable Professional Fees in Making a Substantial Contribution in These Cases, ECF No. 29240; Order Granting the Application of the Ad Hoc Group of Holders of Notes Issued by Lehman Brothers Treasury Co. B.V. and Guaranteed by Lehman Brothers Holdings, Inc., Pursuant to 11 U.S.C. § 503(b) for Allowance of Administrative Expenses for Counsel's Services Incurred in Making a Substantial Contribution in These Cases, ECF No. 30162; Order Granting in Part the Application of the Ad Hoc Group of Lehman Brothers Creditors for Compensation for Professional Services Rendered By, and Reimbursement of Actual and Necessary Expenses of, Its Professionals Pursuant to Section 503(b) of the Bankruptcy Code, ECF No. 31063; Order Granting Application of Goldman Sachs Bank USA and Goldman Sachs International for Entry of an Order Pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) for Allowance and Reimbursement of Reasonable Professional Fees in Making a Substantial Contribution in These Cases, ECF No. 31064; Order Granting Lehman Brothers Special Financing Inc. Working Group's Application, as Modified, for Entry of an Order, Pursuant to §§ 503(b)(3)(D) and 503(b)(4) for Allowance and Reimbursement of Reasonable Professional Fees and Actual, Necessary Expenses in Making a Substantial Contribution in These Cases, ECF No. 31310; Order Granting in Part the Application of the Ad Hoc Group of Lehman Brothers Creditors for Compensation for Professional Services Rendered By, and Reimbursement of Actual and Necessary Expenses of, Its Professionals Pursuant to Section 503(b) of the Bankruptcy Code, ECF No. 31480.

This transparent and consensual fee review and approval process worked well and is a tribute to the professionals involved and to the constructive and positive role played by the Fee Committee appointed in these cases.

That record of avoided conflict and pragmatic compromise has now been broken in a contested matter in which the United States Trustee for Region 2 (the "UST") challenges the legal right of members of a committee appointed under Section 1102 of the Bankruptcy Code – *i.e.* an official committee – to be paid reasonable compensation for legal services rendered to the individual members of that committee by their own attorneys when those fees, subject to findings of reasonableness, have been awarded under Lehman's confirmed plan of reorganization (the "Plan").[2]   The issue presented, whether to allow the professional fees of members of the Official Committee of Unsecured Creditors (the "Committee"), including two indenture trustees (collectively, the "Applicants"), focuses attention on the suitability of using plan provisions as a means to authorize the payment of professional fees where it is unclear – or even doubtful – that such fees could be recovered as administrative expenses if payment provisions had not been specified in the Plan.

Given the resolution of each of the other prior disagreements relating to professional fees, this isolated fee dispute stands out from the rest and must be about more than the fees themselves.  A total of approximately $26 million is at stake, but in the context of the Lehman cases, that is not much money.[3]   This fight is about principle and the proper way to interpret

---

[2] *See* Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, dated August 31, 2011, ECF No. 19627; Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, ECF No. 22737; Notice of Filing of Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, ECF No. 22973; Order Confirming Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Confirmation Order"), ECF No. 23023.

[3] No economic stakeholder has complained about payment of these fees.  The Plan providing for these payments was accepted by an overwhelming percentage of creditors and confirmed in a consensual hearing on December 6, 2011. *See* Declaration of Jane Sullivan on Behalf of Epiq Bankruptcy Solutions, LLC, Regarding Voting and Tabulation of

distinct sections of the Bankruptcy Code in relation to enabling language in the Plan that authorizes distributions of cash from the Lehman estate to individual Committee members and certain indenture trustees to pay for their counsel fees.  The Court assumes that Section 6.7 of the Plan detailing the entitlement to these distributions was added purposefully to give the Applicants greater assurance that they actually would receive these payments notwithstanding sections of the Bankruptcy Code indicating that payment of such counsel fees, in the ordinary course, would not be allowable as administrative expenses.[4]

As a practical matter, members of the Committee would not have been able to claim these payments with any degree of confidence were it not for the implementing language in the Plan. That is due to the structure of Sections 503(b)(3) and 503(b)(4) of the Bankruptcy Code.  Under these sections, members of an official committee are not included in the list of creditors who qualify to claim administrative expense treatment for counsel fees for having made a substantial contribution in a bankruptcy case.

Section 6.7 of the Plan (securing the right to such payments for the Applicants) introduces what amounts to a contractual patch designed to cure these statutory omissions, and therein lies the rub.  There are important appearance and policy issues at stake here: should members of any official committee who by statute have a central role in plan negotiations be allowed to use the plan process for their own financial gain and should they be able to realize

---

Ballots Cast on Debtors' Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, ECF No. 22743; Supplement to Declaration of Jane Sullivan on Behalf of Epiq Bankruptcy Solutions, LLC, Regarding Voting and Tabulation of Ballots Cast on Debtors' Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, ECF No. 22972.

[4] The Court notes that the Bankruptcy Code allows for payment of "reasonable compensation for professional services rendered" by an attorney or accountant employed by an indenture trustee if such indenture trustee has an allowable expense under Section 503(b)(3)(D), *i.e.*, an allowable administrative expense for substantial contribution. 11 U.S.C. § 503(b)(4).  This Memorandum Decision focuses on whether the Applicants are entitled to reimbursement of professional fees under Section 6.7 of the Plan, and the Court finds, for the reasons stated in this decision, that payment of the requested fees is permissible under Section 1129(a)(4) of the Bankruptcy Code. Accordingly, the Court does not need to determine whether the indenture trustees who are Applicants are entitled to reimbursement of professional fees under Section 503(b)(3)(D) of the Bankruptcy Code.

benefits that the Bankruptcy Code ordinarily would not sanction?  The Court believes this question animates the current dispute and is the reason compromise has not been possible.

These big picture concerns may explain motivations but do not change the analysis.  The inclusion of Section 6.7 as a mechanism to pay these professional fees is but one example of the creativity of the plan process itself, especially in a large and complex – and, in this instance, the largest ever – chapter 11 case.  The Bankruptcy Code allows and even encourages such creativity within the broad outlines of what a plan must include (Section 1123(a)) or may include (Section 1123(b)).  The available structuring alternatives are unconstrained but not limitless.  The provisions of a plan simply must not be inconsistent with provisions of the Bankruptcy Code.

In establishing a right to receive reasonable payments under a plan that otherwise would not have been available to the Committee members if they had sought to recover such payments as allowed administrative expenses, Section 6.7 illustrates the ability to use language in a plan to achieve desired economic outcomes.  It highlights the distinction between the types of administrative expenses that parties may claim against a debtor entity under applicable provisions of the Bankruptcy Code and other permissible expenses, not catalogued within the statute itself, that still may be identified and paid by the estate pursuant to a consensual plan of reorganization.  The plan language provides for detailed treatment of the claims of stakeholders and becomes the means to provide for payment of certain expenses that are not specified in the Bankruptcy Code.

The question presented is whether that result should be permitted under the circumstances presented and whether a plan legitimately may provide for payment of the legal expenses of individual members of an official committee if the very same sort of expenses would not have been payable if sought as part of the process of allowing administrative expenses.  Stated

6

differently, can a plan properly circumvent the apparent restrictions on administrative expense

treatment for professional compensation claims of this sort?  The Court concludes that these

payments under a plan are proper, provided that the payments are reasonable and not inconsistent

with applicable provisions of the Bankruptcy Code.  Here, the proposed payments of

professional fees incurred by individual members of the Committee, even though not expressly

provided by Section 503(b), are also not inconsistent with Section 503(b)[5].

In reaching this conclusion, the Court rejects as overly restrictive the reading of Section

503(b) advanced by the UST in her objection to the requested fees.  The UST's argument is built

on the proposition that Section 503(b) has a controlling and preclusive impact and is the

exclusive pathway by which a member of an official committee can ever be entitled to receive

compensation for legal fees incurred while serving on such a committee.  Under her

interpretation, the limitations in Sections 503(b)(3) and 503(b)(4) are disqualifying for members

of the Committee.  She submits that they both eliminate the potential for members of an official

committee to receive payment for counsel fees under these sections *and* foreclose the option for

such compensation to be paid permissibly by any other means.  Her argument, if accepted, would

negate in absolute terms the possibility of plan treatment that might offer to compensate

---

[5] The Lehman cases are considered by many observers to be the most complicated bankruptcy cases in history and, as stated in the respective declaration of each of the Applicants in support of the Application (defined below), the Applicants performed services within such an extraordinary setting of complexity that it would have been difficult if not impossible for them to have carried out their duties without being able to confer with their own counsel.  *See* Omnibus Application of (I) Individual Members of Official Committee of Unsecured Creditors and (II) Indenture Trustees Pursuant to Section 1129(a)(4), or, Alternatively, Sections 503(b)(3)(D) and 503(b)(4) of Bankruptcy Code for Payment of Fees and Reimbursement of Expenses (the "Application"), Exs. B1-B8, ECF No. 24762.  In that sense, this dispute regarding entitlement to fees for individual members of a committee arises within an atypical context.  The Court assumes that it will be the rare chapter 11 case in which individual members of an official committee will choose to retain or will need access to their own personal counsel in addition to committee counsel and even rarer still that a plan would include a payment provision such as the one being considered here.  The conclusions reached, while not limited to the facts presented, relate to those situations where the plan provision fits the needs of the particular case and should not be viewed as an open invitation to craft similar provisions to cover the expenditures of individual committee members for their own retained professionals.

members of an official committee for their personal professional fees under any and all circumstances.

That reading goes too far and confuses the capacity to assert a substantial contribution claim with the ability to be granted the functional equivalent of such a right to payment under a plan that has been ratified so overwhelmingly by creditors.  The flaw in the UST's argument is the embedded assumption that the administrative claim formulation of Section 503(b) functions as a trump card that extends across the Bankruptcy Code to block the formulation of a plan that proposes independent grounds for granting comparable payment rights.  There is no basis for such a contention.  Moreover, the objection of the UST discounts both the enormous leeway granted to the architects of plans under Section 1123(b)(6) of the Bankruptcy Code (providing that a plan may include any other appropriate provision not inconsistent with the applicable provisions of this title) and the authority and discretion of the bankruptcy court to approve payments in connection with a plan as being reasonable under Section 1129(a)(4).

Every chapter 11 plan in a complex business case necessarily is a one of a kind formulation, the product of negotiations that are peculiar to the fact pattern, requirements, circumstances, business realities and political pressures of the case.  In the negotiations that produced the Plan, the parties involved succeeded in constructing a pragmatic global settlement that, among other things, conspicuously provided for the Applicants to receive the now-disputed payments.  The fact that the parties agreed to include Section 6.7 in the Plan during the course of their negotiations is a strong indication that the parties considered the proposed treatment to be justified and that alone really should end the discussion provided that the section is not inconsistent with the Bankruptcy Code.  How this feature came to be part of the Plan does not

matter for purposes of this decision.  The undisputed fact remains that payment of these fees became an element of the grand bargain that all creditors voted on and accepted by a landslide.

When it comes to plan provisions, the variations are virtually without limit, and properly so.  To fulfill its reorganization purposes, a plan must be an endlessly adaptable tool that fits the particular needs and dynamics of each case.  The free expression of plan proponents should not be restrained except to the extent of complying with the requirements of the Bankruptcy Code that govern plan content.  Section 503(b) is not a straitjacket, and the provisions of that section that directly govern the allowance of administrative claims do not control the plan process and are not inconsistent with more the more liberal treatment prescribed in the Plan.

For the reasons stated in this decision, the Court agrees with the Applicants and finds that the Plan provision in question is a proper means to provide for payment of the requested fees. Any unresolved disputes as to reasonableness of the fees sought by individual Applicants shall be the subject of further proceedings should that be necessary.  The UST is directed to meet and confer with the Applicants in an effort to resolve any open issues regarding reasonableness.

The following two sections of this decision discuss the procedural setting in which this contested matter arises and the legal authority that supports the Court's conclusion.

### *Procedural Background for the Fee Dispute*

The issues presented in this contested fee dispute are linked to the successful negotiations that culminated in the formulation and confirmation of the Plan.  This process of negotiation and consensual dispute resolution was unprecedented in its complexity and involved exceptionally difficult questions that implicated distribution rights and creditor treatment.  Issues in relation to substantive consolidation and re-characterization were overwhelmingly complicated and unpredictable.  A contested confirmation would have been virtually impossible to litigate.

Settlements were needed and emerged as the only practical alternative to avoid a monumental and unmanageable confirmation battle.

These settlements are the foundation of the Plan, and the Applicants individually take some of the credit for having helped to bring the chapter 11 cases of Lehman Brothers Holdings Inc. and its affiliated debtors (the "Debtors") to a successful conclusion.  Presumably in recognition of these efforts, the Debtors agreed to pay all of the reasonable fees and expenses, including attorneys' fees, incurred by the Applicants in connection with the chapter 11 cases.

This commitment of the Debtors is memorialized in Section 6.7 of the Plan which provides that

> [s]ubject to entry of the Confirmation Order, the reasonable fees and expenses (including attorneys fees) of (a) the indenture trustee for the Senior Notes and the Subordinated Notes and (b) the individual members of the Creditors' Committee, in each case, incurred in their capacities as indenture trustee or member of the Creditors' Committee, respectively, shall, (i) to the extent incurred and unpaid by a Debtor prior to the Effective Date, be Allowed as Administrative Expense Claims and paid by the Debtors in accordance with the Debtor Allocation Agreement upon application to and subject to approval of the Bankruptcy Court, and (ii) to the extent incurred after the Effective Date, be Allowed as Administrative Expense Claims and paid by the Debtors on a monthly basis upon the submission of fee statements without further order of the Bankruptcy Court.

Plan § 6.7.

In November 2011, the UST filed an objection to the confirmation of the Plan (the "UST Objection").  ECF No. 21640.  Among the points raised is the argument that payment of the fees and expenses under Section 6.7 violated the Bankruptcy Code.  The UST asserted that Section 503(b) of the Bankruptcy Code is the proper standard for evaluating the reasonable fees and expenses of members of the Committee.  *See* UST Objection.  As a result of subsequent negotiations, the UST agreed to withdraw the UST Objection upon a reservation of her rights with respect to "the appropriate legal standard for such applications, and any objection that

10

payment of such fees is unauthorized under the Bankruptcy Code and the Bankruptcy Rules." Confirmation Order ¶ 74.

The Applicants filed the Application on January 30, 2012, and immediately thereafter filed a Notice of Amendment to Omnibus Application of (I) Individual Members of Official Committee of Unsecured Creditors and (II) Indenture Trustees Pursuant to Section 1129(a)(4), or, Alternatively, Sections 503(b)(3)(D) and 503(b)(4) of Bankruptcy Code for Payment of Fees and Reimbursement of Expenses (the "Amendment").  ECF No. 24881.  The Amendment corrects the amounts of fees and expenses requested in the Application.  Amendment ¶¶ 2, 3, Ex. A.  The corrected aggregate amount is $26.3 million.  *Id.*

The Applicants assert that the substantial contribution standard of Section 503(b) is applicable only to compensation requests that are not otherwise agreed to by a debtor or provided for in a plan.  *See* Application ¶ 4.  They also argue that nothing in Section 503(b) dictates that it is the only mechanism for approval of administrative expenses for professional fees and expenses.  *Id.*  Therefore, they contend, courts properly may look to other potentially applicable provisions of the Bankruptcy Code, including Section 1129(a)(4).[6]  The Applicants argue in the alternative that they have, in fact, made a substantial contribution to the success of these chapter 11 cases.

The UST filed an Omnibus Objection of the United States Trustee to Creditors' Applications for Reimbursement of Professional Fees and Expenses (the "UST Fee Objection") on February 15, 2012.  ECF No. 25394.  In the UST Fee Objection, the UST argues that Section 503(b) determines the right to professional fees in this instance by specifying procedures for approval of fees and expenses incurred by a member of an official committee.  UST Fee

---

[6] Section 1129(a)(4) requires a bankruptcy court to exercise substantive control over fees and costs related to confirmation and the chapter 11 case.  *See* 11 U.S.C. § 1129(a)(4); 7 Collier on Bankruptcy ¶ 1129.04.

Objection 12.  The UST asserts that Section 503(b) does not allow for the payment of the requested fees to members of the Committee and that the indenture trustees have failed to show a substantial contribution in these cases.  *Id.*  The UST quarrels with the attempt here to bypass the requirements of Section 503(b) in favor of the more general, non-specific provisions of Section 1129(a)(4) of the Bankruptcy Code and makes a number of other arguments challenging the right of the Applicants to payment of the requested fees.  *Id.*

After a period of negotiation, on November 15, 2012 the Applicants submitted their Reply to the UST Objection (the "Applicant Reply").  ECF No. 32129.  Although the Applicant Reply dealt with fee requests of the individual Applicants, the pleading was signed and filed by Milbank, Tweed, Hadley & McCloy LLP ("Milbank"), as counsel to the Committee.  The UST expressed concern regarding Milbank's role in performing services on behalf of the Applicants as a group and this prompted another round of briefing on the question of whether Milbank had acted for the Applicants in a manner that exceeded its authority as counsel to the Committee.

The UST pressed the issue in a supplemental objection in which it argued that Milbank should not be permitted to represent individual members of the Committee.  The UST complained that Milbank had a conflict of interest associated with having to review the fees on behalf of the Committee at the same time that is was also seeking payment of those fees on behalf of the individual committee members.

On December 17, 2012, the Committee filed a response to these assertions, and shortly thereafter the Court heard oral argument at a hearing held on December 19, 2012.  At the outset that hearing, the Court dealt with the question of Milbank's role in the proceeding, stating that "I'm going to permit Milbank to act as it has acted throughout these cases as counsel for the [C]ommittee and I'm going to leave it to Mr. Dunne and his partners and his firm to conclude

whether the conduct of today's hearing is or is not conduct on behalf of his actual client, the

[C]ommittee, or conduct which is on behalf of members of the [C]ommittee.  He has asserted

that he is acting on behalf of the [C]ommittee and I accept that."  12/19/2012 Tr. 58:2-10.

### *Discussion*

*The structure of Section 503(b) and its impact upon claims for fees by members of the Committee*

Section 503(b) of the Bankruptcy Code lists various categories of allowed administrative

expenses.  Section 503(b)(3) in particular sets forth a basis for allowing administrative expenses

for

> the actual, necessary expenses, *other than compensation and reimbursement specified in paragraph (4)* of this subsection, incurred by –
> (A) a creditor that files a petition under section 303 of this title;
> (B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;
> (C) a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;
> (D) *a creditor*, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, *in making a substantial contribution in a case* under chapter 9 or 11 of this title;
> (E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian; or
> (F) *a member of a committee appointed under section 1102 of this title, if such expenses are incurred in the performance of the duties of such committee.*

11 U.S.C. § 503(b)(3) (emphasis added).

Section 503(b)(4) provides for the reimbursement of certain professional fees incurred by

parties listed in Section 503(b)(3).  Specifically, Section 503(b)(4) provides reimbursement for

the

> reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.

13

11 U.S.C. § 503(b)(4).

Although expenses incurred by a member an official committee qualify for reimbursement under Section 503(b)(3)(F), that entitlement does not extend to reasonable compensation for professional fees under Section 503(b)(4).[7]  When read together, these two subsections enable members of an official committee to obtain reimbursement of expenses incurred in connection with service on a committee (such as out of pocket travel expenses for attending a meeting of an official committee) but, by omission, appear to exclude the possibility of obtaining administrative expense treatment for professional services rendered to a member of an official committee because subparagraph (F) is not mentioned in Section 503(b)(4).

The UST views this missing reference to subparagraph (F) as definitive and dispositive. Under her interpretation, the fact that subparagraph (F) is not included within the list of entities that may assert an administrative claim for professional fees completely eliminates the possibility that such fees may be reimbursed under any circumstance.[8]  This conclusion, while a fair reading of the internal standards applicable to allowance of administrative claims, fails to take into account the ability, addressed below, to identify other means to provide for reimbursement of such professional fees.

---

[7] Section 503(b)(4) was amended by enactment of the Bankruptcy Abuse and Consumer Protection Act of 2005 to exclude professional fees incurred by an individual member of an official committee.  Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 1208, 119 Stat. 23, 194 (2005).  A review of legislative history does not shed any light on the thinking that underlies this amendment to Section 503(b)(4) or why such fees are not included in the category of allowed administrative expenses.  *See, e.g.*, H.R. REP. No. 109-31 (2005).  One possible explanation is that members of an official committee ordinarily will not need personal counsel and will be able to rely upon the services of those professionals who have been retained by the committee.

[8] Notwithstanding that argument, a creditor, even one serving on an official creditors' committee, can seek to have his, her or its attorney/accountant fees reimbursed for having made a "substantial contribution" to the case under Section 503(b)(3)(D).  The Applicants here have moved for approval of their professional fees under Section 1129(a)(4) (subject only to the court's approval as reasonable) or, alternatively, under Section 503(b) for making a "substantial contribution" to the case.  *See supra* note 4.  The Court does not need to address whether the Applicants here have made a "substantial contribution" because, as discussed below, the professional fees at issue may be approved provided that they meet the test of reasonableness under Section 1129(a)(4).

14

*Prescribing the payment of professional fees under provisions of a plan*

Section 1123(b) sets forth a list of those provisions that may be included in a reorganization plan.  Section 1123(b)(6) is a broadly-worded, open-ended invitation to the creativity of those who are engaged in drafting plan language.  This catch-all provides that a plan may "include any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]."  11 U.S.C. § 1123(b)(6).  This amounts to a green light for those engaged in plan negotiations.  Just about anything can be included, provided that the terms of the plan do not run afoul of applicable bankruptcy law.

Section 105(a) of the Bankruptcy Code also authorizes the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  This general repository of power gives the bankruptcy court a great deal of flexibility to confirm a reorganization plan so long as the plan does not otherwise violate the Bankruptcy Code.  *Unites States v. Energy Res. Co., Inc.*, 495 U.S. 545, 549 (1990) ("These statutory directives are consistent with the traditional understanding that bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships" (citing *Pepper v. Litton*, 308 U.S. 295, 303-04 (1939); *United States National Bank v. Chase National Bank*, 331 U.S. 28, 36 (1947); *Katchen v. Landy*, 382 U.S. 323, 327 (1966)).[9]

Therefore, the Court analyzes Section 6.7 of the Plan recognizing the importance of creativity and flexibility in the plan formulation process.  The Court approaches the issue of plan treatment for professional fees from the point of view that plan terms are valid unless those terms are inconsistent with another applicable provision of the Bankruptcy Code.  Plans need to be

---

[9] Even with such broad powers, the bankruptcy court should exercise discretion in circumstances where a plan provision, "[e]ven if consistent with the [Bankruptcy] Code," is "conflicted with another law."  *Energy Res.*, 495 U.S. at 550.

custom-made so that they have the necessary components to respond to the special circumstances of each case.  The division of labor is simple: the proponents propose plan terms, parties in interest have an opportunity to object to those terms and the bankruptcy court has the power to assess whether provisions contained in the plan are appropriate and consistent with applicable law.

The Plan provision now before the Court – Section 6.7 – necessarily invokes Section 1129(a)(4) of the Bankruptcy Code.  That section provides a mechanism for judicial review of payments made or to be made by the debtor in connection with a reorganization plan.  Specifically, Section 1129(a)(4) requires that

> [a]ny payment made or to be made … by the debtor … for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

11 U.S.C. § 1129(a)(4).

The Applicants argue that Section 6.7 of the Plan authorizing the reimbursement of Applicants' professional fees is a provision that easily fits within the broad spectrum of Section 1123(b)(6) and is not inconsistent with provisions that govern the allowance of administrative expenses.  The Court agrees.  Plan provisions, especially in a unique setting such as this, are to be favored and respected unless those provisions can be shown to be contrary to law.  In this instance, the provision authorizing payment of professional fees does not conflict with sections of the Bankruptcy Code that, read literally, would not allow for the payment of the same fees as administrative expenses.

Section 6.7 provides for a consensual reimbursement of professional fees to members of the Committee, not the granting of an administrative expense priority.  The difference is a subtle one, but quite real.  While the provision under the Plan may be another structure to achieve the

16

same basic objective (payment of fees), the path chosen is not improper simply because it provides an alternative method to secure payment of the fees.  The fact that administrative claim status may not be allowed does not mean that an agreed payment under a fully consensual plan should not be permitted.  The confirmation of the Plan substitutes all of the protections that are needed, and the proposed payments to reimburse professionals retained by the Applicants need only to be subjected to the Court's approval as "reasonable" under Section 1129(a)(4).

*The* <u>*Adelphia*</u> *decision supports the conclusion that payments are proper under Section 6.7*

The Applicants rely heavily on Judge Gerber's decision in *In re Adelphia Commc'ns Corp.*, 441 B.R. 6 (Bankr. S.D.N.Y. 2010).  In *Adelphia*, fourteen *ad hoc* committees and certain individual creditors sought reimbursement for professional fees pursuant to a plan provision similar to Section 6.7 of the Plan.  *Id.* at 8-9.  The applicants in *Adelphia*, as part of a global settlement, negotiated for plan treatment in which they would receive reimbursement for professional fees incurred in connection with the chapter 11 cases.  *Id.* at 10-11.  Upon confirmation, the applicants submitted fee applications arguing that such applications were only subject to a reasonableness review under Section 1129(a)(4) of the Bankruptcy Code.  *Id.* at 11. The United States Trustee objected to these fee applications making substantially similar arguments to the ones being made here.  *Id.*

In *Adelphia*, Judge Gerber held that "to the extent that the requested fees are reasonable, and the requirements of section 1129(a)(4) likewise are complied with, [the plan provision providing for reimbursement for certain creditors' professional fees] is permissible, and the [Bankruptcy] Code permits the [applicants'] reasonable fees to be recovered under that provision without showing compliance with sections 503(b)(3) or (4)."  *Id.* at 19.  His reasoning, while

17

addressed to members of *ad hoc* committees rather than official committees, is persuasive and applies to the present controversy.

Plan provisions must be clearly in conflict with applicable provisions of the Bankruptcy Code to become unenforceable. The standards of Section 1123(b)(6) are liberal, and deliberately so. To state this colloquially, a "tie" should go to the "runner" with respect to whether a plan provision is valid. In this instance, that suggests that the benefit of any doubt properly should be given to the plan proponent unless a troubling inconsistency with other provisions of the Bankruptcy Code is manifest. That is not the case here. Indeed, the provisions of Section 6.7 state an independent basis for reimbursing the requested professional fees that stand on their own and that are not inconsistent with the restrictions contained in Section 503(b).

The UST argues that the circumstances applicable to Section 6.7 of the Plan are distinguishable from *Adelphia* because the applicants in *Adelphia* were creditors in *ad hoc* committees while the Applicants are members of an official committee under Section 1102 of the Bankruptcy Code. However, the exclusion of such professional fees from Section 503(b)(4) does not equate to complete prohibition. Section 503(b)(4) is silent on the subject and simply fails to mention payment of such fees. As noted in *Adelphia*, "[S]ection 503(b) does not provide that it is the *only* way by which individual creditors' fees may be absorbed by an estate." 441 B.R. at 14-15 (emphasis in original). That quotation sums it up well: regardless of whether the focus is an *ad hoc* committee or an official committee, Section 503(b) does not prohibit the payment of professional fees by means other than the allowance of administrative expenses.

Applications for the payment of administrative expenses as provided in Section 503(b) and the right to payments made consensually under a plan are clearly distinct. As noted in *Adelphia*, there are basic differences between a claim for reimbursement of professional fees

under Section 503(b) and payments that are made pursuant to a plan of reorganization.  Requests

for payment under Section 503(b) are "nonconsensual in nature,"  441 B.R. at 12, but a payment

"made in connection with a reorganization plan" ordinarily will be made on a consensual basis.

*Id.* at 13.

But this is not just an abstract discussion about the significance of consensual plan

treatment.  The Plan that includes Section 6.7 offers a vivid example of a spectacularly

successful plan process.  The Plan was accepted in a lopsided affirmative vote by a vast majority

of accepting creditors, and their votes ratified the compromises embodied in the Plan and all of

its provisions.  One reasonable conclusion from that vote is that the creditors have spoken,

virtually with one voice, and have chosen not to object to the payments that the UST has

determined to oppose.  The fact of informed voting by sophisticated creditors distinguishes

payments that the Debtors propose to make under the Plan from those that might be claimed in

the ordinary course as administrative expenses.  Here the payments are specified in the Plan and,

but for the arguments advanced by the UST, seem not to be the least bit controversial.  The

acceptances of the Plan are a strong, one-sided referendum in support of paying the fees

requested by the Applicants.[10]

### Conclusion

For the reasons stated, the UST Fee Objection is not well-founded and is overruled.  It is

based on the proposition that Section 503(b) standards for allowing administrative expenses

necessarily must govern the right of individual members of an official committee to receive

reimbursements for their professional expenses.  That mixes up the test for being able to assert

an administrative expense claim with the right to receive a payment that the Debtors voluntarily

---

[10] The UST argues that the Plan was not consensual because the UST preserved her ability to object to Section 6.7.
UST Fee Objection 20-21.  While true, that reservation of rights does nothing to diminish the fact that the Plan is an
outstanding example of consensus achieved and conflict avoided.

have proposed to make under the Plan and that may be authorized in accordance with Section 1129(a)(4).

A consensual payment offered by a debtor is not the same as and should not be confused with the treatment of a claim made against a debtor.  Section 6.7 is an example of such a consensual payment offered to the Applicants in consideration of their extraordinary services in the Lehman cases that contributed to the success of the Plan.  Provisions such as this are not standard, but they are permissible.  While permissible, payment of professional fees to members of an official committee under a plan is a practice that, in the Court's judgment, should be reserved for those special occasions of exceptional justification comparable to those presented by the Applicants.

The Applicants shall meet and confer with the UST in an effort to resolve any remaining questions as to reasonableness of the fees granted under Section 6.7 of the Plan.  Unresolved questions shall be submitted to the Court for a determination of reasonableness in accordance with Section 1129(a)(4).


SO ORDERED.


Dated: New York, New York
       February 15, 2013

                                        *s/ James M. Peck*
                                        _____
                                        Honorable James M. Peck
                                        United States Bankruptcy Judge