No. 1:13-cv-02211-RJS

_____

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

In re LEHMAN BROTHERS HOLDINGS INC., et al., Debtors.

_____

UNITED STATES TRUSTEE, Appellant,

v.

ELLIOTT MANAGEMENT CORP., et al., Appellees.

_____

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

**BRIEF OF APPELLANT TRACY HOPE DAVIS, UNITED STATES TRUSTEE**

_____

RAMONA D. ELLIOTT                TRACY HOPE DAVIS
Deputy Director/General Counsel  United States Trustee for Region 2
P. MATTHEW SUTKO                 LINDA A. RIFFKIN
Associate General Counsel        Assistant United States Trustee
NOAH M. SCHOTTENSTEIN            SUSAN D. GOLDEN
Trial Attorney                   Trial Attorney

Department of Justice            Department of Justice
Executive Office for             Office of the United States Trustee
  United States Trustees         33 Whitehall Street, 21st Floor
441 G Street, NW                 New York, NY 10004
Suite 6150                       Tel: (212) 510-0500
Washington, DC 20530             Fax: (212) 668-2255

# TABLE OF CONTENTS

STATEMENT OF APPELLATE JURISDICTION .................................................. 1

STATEMENT OF THE ISSUE ............................................................................ 1

STANDARD OF REVIEW .................................................................................. 2

STATEMENT OF THE CASE .............................................................................. 2

    I.      Statutory Framework .......................................................................... 2

    II.     The Lehman estate pays $193,910,000 to the Committee's court-approved attorneys. .. 3

    III.    The Committee Members seek an additional $26,000,000 from the estate to fund their in-house-attorney operations and to pay their outside counsel fees. ...................... 5

    IV.    The court awards $26,000,000 in personal attorneys' fees under section 1129(a)(4). .... 8

SUMMARY OF THE ARGUMENT ..................................................................... 9

ARGUMENT ....................................................................................................... 11

    I.      In *Espinosa*, the Supreme Court held that bankruptcy courts must enforce the Bankruptcy Code at plan confirmation, even when no one objects.................................. 11

    II.     The Committee Members could not recover the $26,000,000 in personal attorneys' fees as administrative expenses under section 6.7 of the plan because that provision did not comply with sections 503(b)(3)(F) and 503(b)(4) of the Bankruptcy Code. ...... 13

        A.    Congress specifically prohibited committee members from recovering personal attorneys' fees for committee-related work when it amended section 503(b)(4) in 2005. ........................................................................ 13

        B.    The Second Circuit's decision in *Keren* confirms that bankruptcy courts may not utilize a broad provision to overcome a specific limitation in section 503(b). .......... 16

        C.    Alternatively, the bankruptcy court could not have allowed the fees as a substantial contribution under sections 503(b)(3)(D) and 503(b)(4).......................... 19

    III.    Section 1129 does not authorize the bankruptcy court to award attorneys' fees prohibited under section 503(b)(4)................................................................... 20

        A.    The text of section 1129 does not authorize the bankruptcy court to do anything more than confirm a plan if the statutory requirements are met................................. 20

        B.    Section 1129(a)(4) neither abrogates the applicability of the Bankruptcy Code under section 103(a) nor authorizes a bankruptcy court to confirm a plan that violates section 1129(a)(1)'s compliance requirement................................................. 23

    IV.    The bankruptcy court's "alternative" procedure has no limiting principle.................... 24

CONCLUSION.................................................................................................... 25

CERTIFICATE OF SERVICE

STATUTORY APPENDIX

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. Zarnel (In re Zarnel),*
    619 F.3d 156 (2d Cir. 2010)........................................................................................4

*In re Adelphia Commc'n Corp.,*
    441 B.R. 6 (Bankr. S.D.N.Y. 2010)..........................................................................22

*In re Best Prods. Co.,*
    173 B.R. 862 (Bankr. S.D.N.Y. 1994)......................................................................20

*Cushman & Wakefield of Conn., Inc. v. Keren Ltd. P'ship,*
    189 F.3d 86 (2d Cir. 1999).............................................................................. *passim*

*In re Detweiler,*
    No. 09-63377, 2012 WL 5935343 (Bankr. N.D. Ohio Nov. 27, 2012) ....................13

*Dish Network Corp. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.),*
    634 F.3d 79 (2d Cir. 2011)..................................................................................24, 25

*In re Draiman,*
    450 B.R. 777 (Bankr. N.D. Ill. 2011) .......................................................................21

*F/S Airlease II, Inc. v. Simon (In re F/S Airlease II, Inc.),*
    844 F.2d 99 (3d Cir. 1988).......................................................................................17

*Former Emps. of Builders Sq. Retail Stores v. Hechinger Inv. Co. of Del. (In re Hechinger Inv. Co. of Del.),*
    298 F.3d 219 (3d Cir. 2002).....................................................................................17

*Gen. Am. Transp. Corp. v. Martin (In re Mid Region Petroleum, Inc.),*
    1 F.3d 1130 (10th Cir. 1993) ..............................................................................14, 15

*In re Hawker Beechcraft, Inc.,*
    479 B.R. 308 (Bankr. S.D.N.Y. 2012) .....................................................................24

*Lebron v. Mechem Fin., Inc.,*
    27 F.3d 937 (3d Cir. 1994)........................................................................................20

*Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.),*
    150 F.3d 503 (5th Cir. 1998) ...............................................................................21, 22

ii

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 (2006)..................................................................................23

*Milavetz, Gallop & Milavetz, P.A. v. United States*,
    130 S. Ct. 1324 (2010)......................................................................15, 18

*In re Milwaukee Engraving Co.*,
    219 F.3d 635 (7th Cir. 2000) ..............................................................17

*Official Unsecured Creditors' Comm. v. Michaels (In re Marin Motor Oil., Inc.)*,
    689 F.2d 445 (3d Cir. 1982)..................................................................3

*Patterson v. Shumate*,
    504 U.S. 753 (1992)..............................................................................6

*Pfizer Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co.)*,
    676 F.3d 45 (2d Cir. 2012)..................................................................2, 9

*RadLAX Gateway Hotel, LLC v. Amalagamated Bank*,
    132 S. Ct. 2065 (2012) ..............................................17, 18, 19, 20, 23

*In re Residential Capital, LLC*,
    478 B.R. 154 (Bankr. S.D.N.Y. 2012)................................................24

*In re S & Y Enters.*,
    480 B.R. 452 (Bankr. E.D.N.Y. 2012)................................................25

*Stone v. INS*,
    514 U.S. 386 (1995)............................................................................16

*Supplee v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.)*,
    479 F.3d 167 (2d Cir. 2007) (Sotomayor, J.).................................13, 15

*In re TCI 2 Holdings, LLC*,
    428 B.R. 117 (Bankr. D.N.J. 2010) ...................................................21

*In re Texaco, Inc.*,
    84 B.R. 893 (Bankr. S.D.N.Y. 1988).................................................21

*Trs. of Amalgamated Ins. Fund v. McFarlin's, Inc.*,
    789 F.2d 98 (2d Cir. 1986).................................................................13

*United States v. Schilling (In re Big Rivers Elec. Corp.)*,
    355 F.3d 415 (6th Cir. 2004) ............................................10, 21, 22, 24

*United Student Aid Funds Inc. v. Espinosa*,
    130 S. Ct. 1367 (2010).............................................................. *passim*

*United Trucking Serv., Inc. v. Trailer Rental Co. (In re United Trucking Serv., Inc.)*,
    851 F.2d 159 (6th Cir. 1988) ................................................................................13

*Water Transp. Ass'n v. ICC*,
    722 F.2d 1025 (2d Cir. 1983) ................................................................................6

**Statutes**

11 U.S.C. § 103(a) ................................................................................ *passim*

11 U.S.C. § 105(a) ................................................................................17

11 U.S.C. § 307 ................................................................................4

11 U.S.C. §§ 327-331 ................................................................................24

11 U.S.C. § 330(a) ................................................................................4, 5

11 U.S.C. § 503(b) ................................................................................ *passim*

11 U.S.C. § 503(b)(1)-(9) ................................................................................14, 17

11 U.S.C. § 503(b)(1)(A) ................................................................................16

11 U.S.C. § 503(b)(2) ................................................................................5, 16,17

11 U.S.C. § 503(b)(3) ................................................................................3

11 U.S.C. § 503(b)(3)(D) ................................................................................ *passim*

11 U.S.C. § 503(b)(3)(F) ................................................................................ *passim*

11 U.S.C. § 503(b)(4) ................................................................................ *passim*

11 U.S.C. § 503(c)(1)-(2) ................................................................................24

11 U.S.C. § 507(a)(2) ................................................................................3, 5

11 U.S.C. § 523(a)(8) ................................................................................12

11 U.S.C. § 1102 ................................................................................4

11 U.S.C. § 1103 ................................................................................4, 5, 24

11 U.S.C. §§ 1123-1126 ................................................................................2

11 U.S.C. § 1123(b)(6) ................................................................................2, 9, 23

iv

11 U.S.C. § 1129 ...................................................................................................2

11 U.S.C. § 1129(a) ...........................................................................................2, 21

11 U.S.C. § 1129(a)(1) ................................................................................. *passim*

11 U.S.C. § 1129(a)(1)-(16) ...............................................................................2

11 U.S.C. § 1129(a)(4) ................................................................................. *passim*

11 U.S.C. § 1129(b)(2)(B) ..................................................................................5

11 U.S.C. § 1325(a)(1) .......................................................................................12

28 U.S.C. § 157 ...................................................................................................1

28 U.S.C. § 158(a)(1) ..........................................................................................1

28 U.S.C. § 158(c)(2) ..........................................................................................1

28 U.S.C. § 581 ...................................................................................................4

28 U.S.C. § 586 ...................................................................................................4

28 U.S.C. § 1334 .................................................................................................1

**Rules**

Fed. R. Bankr. P. 2014 ......................................................................................24

Fed. R. Bankr. P. 2016 ......................................................................................24

Fed. R. Bankr. P. 8002 ........................................................................................1

**Other Authorities**

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005,
   Pub. L. No. 109-8, 119 Stat. 23 ...................................................................15

4 Collier on Bankruptcy ¶503.LH[3] (16th ed. 2010) ......................................5

7 Collier on Bankruptcy ¶1129.29[4] (16th ed. 2010) ....................................21

H.R. Rep. No. 109-31, at 142 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88 ...............15, 16,18

## STATEMENT OF APPELLATE JURISDICTION

The bankruptcy court had jurisdiction over Lehman Brothers Holdings Inc.'s chapter 11 bankruptcy cases under 28 U.S.C. §§ 157 and 1334.  The bankruptcy court entered its final order awarding attorneys' fees and expenses under 11 U.S.C. § 1129(a)(4) on February 15, 2013.  The United States Trustee filed a timely notice of appeal from that order under 28 U.S.C. § 158(c)(2) and Fed. R. Bankr. P. 8002 on March 1, 2013.  Dkt. 35662.[1]

This Court has appellate jurisdiction under 28 U.S.C. § 158(a)(1).

## STATEMENT OF THE ISSUE

This appeal presents a question of law.  No facts are in dispute.

A court may confirm a chapter 11 plan "only if all" sixteen of section 1129(a)'s statutory requirements are met.  Section 1129(a)(4) requires that all plan payments for "services, costs or expenses" be reasonable.  Section 1129(a)(1) requires that the plan comply with the "applicable provisions of" title 11, the Bankruptcy Code.  Section 103(a) makes section 503(b), which governs administrative expenses in bankruptcy cases, applicable in chapter 11 cases.

In this chapter 11 case, section 6.7 of the Lehman plan sought to give these appellees, who are members of Lehman's official creditors' committee, $26,000,000 in personal attorneys' fees as section 503(b) administrative expenses — even though Congress specifically amended section 503(b) in 2005 to prohibit payments for individual committee members' attorneys' fees. The court below approved the attorneys' fees under section 6.7 of the plan because it found that the fees were "reasonable" under section 1129(a)(4).

---

[1]  All references to the bankruptcy court record, Case No. 08-B-13555, are cited as "Dkt."  All page numbers refer to the pagination of the PDF file for each document.

Therefore, the question presented is whether a court may ignore the requirements of sections 103(a), 503(b), and 1129(a)(1) if it finds that a payment is "reasonable" under section 1129(a)(4).

## STANDARD OF REVIEW

Questions of statutory interpretation are reviewed de novo. *Pfizer Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co.)*, 676 F.3d 45, 58 (2d Cir. 2012).

## STATEMENT OF THE CASE

**I.    Statutory Framework**

In a chapter 11 bankruptcy case, the debtor repays creditors according to the terms of a reorganization plan, which creditors may vote to accept or reject after they have been provided with a court-approved disclosure statement containing "adequate information" about the assets, liabilities, and financial affairs of the debtor.   11 U.S.C. §§ 1123, 1125, 1126.   A plan may include "any appropriate provision" that is "not inconsistent with the applicable provisions" of the Bankruptcy Code.   11 U.S.C. § 1123(b)(6).

If a reorganization plan is accepted, it must then be confirmed by the bankruptcy court. 11 U.S.C. § 1129.   Section 1129(a) sets forth a checklist of sixteen findings that the court must make before confirming the plan.   11 U.S.C § 1129(a)(1)-(16).   Two of those requirements are relevant to this appeal.   Section 1129(a)(1) requires that "the plan complies with the applicable provisions of" the Bankruptcy Code.   Section 1129(a)(4) requires that a payment "made or to be made . . . for services or for costs and expenses" in connection with the case "has been approved by, or is subject to the approval of, the court as reasonable."

Chapters 1, 3, and 5 of the Bankruptcy Code apply in chapter 11 cases, subject to an exception not applicable here.   11 U.S.C. § 103(a).   One applicable provision is section 503.

2

That section establishes standards governing "administrative expenses," which the debtor must pay before most other unsecured claims and expenses.  *See* 11 U.S.C. § 507(a)(2).

Three provisions of section 503 are relevant to this appeal.  Section 503(b)(3)(D) allows a party to recover administrative expenses for "making a substantial contribution" in a chapter 11 case.  Section 503(b)(3)(F) allows a member of an official creditors' committee to recover expenses "incurred in the performance of the duties of such committee."  And section 503(b)(4) allows a party to recover attorneys' fees when an "expense is allowable under subparagraph (A), (B), (C), (D), or (E)" — but not subparagraph (F) — of section 503(b)(3).

## II.    The Lehman estate pays $193,910,000 to the Committee's court-approved attorneys.

The appellees are seven large financial institutions who sat on Lehman's Official Committee of Unsecured Creditors (collectively, the "Committee Members").[2]  The Committee Members are:[3]

**The Bank of New York Mellon**, a financial services company with $359 billion in assets.  The Bank of N.Y. Mellon Corp., 2012 Annual Report 40 (2013).

**The Vanguard Group**, an investment management company with $2 trillion in assets.  Press Release, The Vanguard Grp., Inc., Vanguard CEO Thanks Clients as U.S. Assets Top $2 Trillion (Jan. 10, 2013), *available at* http://tinyurl.com/cscgn4x.

_____

[2]  The Committee Members "represent the various classes of creditors . . . from which they are selected" and "provide supervision of the debtor in possession and of the trustee."  *Official Unsecured Creditors' Comm. v. Michaels (In re Marin Motor Oil., Inc.)*, 689 F.2d 445, 455-56 (3d Cir. 1982) (internal quotation and citation omitted).   As fiduciaries, the Committee Members are bound to "protect their constituents' interests."  *Id.*

[3]  All citations to "Form" refer to publicly available SEC filings.

**Mizuho Corporate Bank, Ltd.**, a financial services company with ¥166 trillion (approximately $1.7 trillion) in assets.  Mizuho Fin. Grp., Inc., Form 20-F (Jul. 23, 2012).

**Elliott Management Corp.**, an investment adviser with over $21.5 billion in assets. Elliott Mgmt. Corp., Form ADV (Apr. 1, 2013).

**Shinsei Bank, Limited**, a financial services company with ¥9.1 trillion (approximately $105.4 billion) in assets. Press Release, Shinsei Bank, Shinsei Bank Reports Earnings for the Nine Months Ended December 31, 2012 (Jan. 31, 2013), *available at* http://tinyurl.com/cc47mhl.

**U.S. Bank N.A.**, a financial services company with $354 billion in assets.  U.S. Bancorp, Form-ARS (Mar. 13, 2013).

**Wilmington Trust Company**, a financial services company with $1.8 billion in assets. M&T Bank Corp., Form 10-K (Feb. 25, 2013).

The United States Trustee[4] appointed the Committee in September 2008.[5]  Dkt. 62.  After its appointment, the Committee received bankruptcy court approval to retain legal counsel at the bankruptcy estate's expense.  *See* 11 U.S.C. § 1103(a) (authorizing the Committee to retain attorneys and other professionals subject to court approval); 11 U.S.C §§ 330(a)(1), 502(b)(2) (allowing professionals employed under section 1103(a) to request "reasonable compensation" as

---

[4]  The United States Trustee is an official of the Department of Justice appointed by the Attorney General to supervise the administration of bankruptcy cases.  28 U.S.C. §§ 581, 586.  The United States Trustee "may raise and may appear and be heard on any issue" in a chapter 11 case.  11 U.S.C. § 307.  The United States Trustee has standing to appeal orders of the bankruptcy courts notwithstanding the lack of a pecuniary interest in the outcome. *Adams v. Zarnel (In re Zarnel)*, 619 F.3d 156, 161 (2d Cir. 2010).

[5]  The United States Trustee has the exclusive statutory authority to appoint a creditors' committee.  11 U.S.C. § 1102.  Here, the Committee's membership changed three times during the case.  Dkt. 592; Dkt. 6217; Dkt. 7034.  Except for Shinsei Bank, the Committee Members are current members of the Committee.

4

an administrative expense).   The Committee employed two firms: Milbank, Tweed, Hadley &

McCloy LLP and Quinn, Emanuel, Urquhart, Oliver, & Hedges LLP.   Dkt. 1652; Dkt. 1654.

Over the course of the bankruptcy case, the Committee's court-approved counsel provided

approximately 336,992 hours of legal services.   Dkt. 29238 at 32-33; Dkt. 29236 at 13.   The

firms' total cost to the estate for assisting the Committee was $193,910,000 in administrative

expenses under sections 330(a) and 503(b)(2).   Dkt. 29238 at 36; Dkt. 29236 at 25.

## III.   The Committee Members seek an additional $26,000,000 from the estate to fund their in-house-attorney operations and to pay their outside counsel fees.

The Committee Members were not satisfied with the $193,910,000 for the Committee's

court-approved professionals.   As representatives of the unsecured creditors, the Committee

Members participated in the negotiations over the chapter 11 plan.  S*ee* 11 U.S.C. § 1103(c)(3).

In doing so, they apparently managed to convince the debtor to include a term in a third amended

plan that gave the Committee Members personal attorneys' fees, payable as administrative

expenses.   Dkt. 24762 at 3; *see* Dkt. 19629 at 80 (providing no explanation for why the debtor

added this provision to the plan in the disclosure statement for the plan); Dkt. 22743 (creditors'

vote accepting the plan, with 10% of the secured creditors and general unsecured creditors voting

to reject the plan).

The text of the plan deemed that these fees would be paid as section 503(b)

administrative expenses:

> **(a)** section 6.7 of the plan provided that the payments shall "be Allowed as Administrative Expense Claims . . . without further order of the Bankruptcy Court," Dkt. 19627 at 83; and
>
> **(b)** section 1.1 of the plan defined "Administrative Expense Claim" as "any right to payment constituting a cost or expense of administration . . . under sections 503(b) and 507(a)(2) of the Bankruptcy Code." *Id.* at 14.

The United States Trustee objected to section 6.7.  Dkt. 21640.  The government argued that the plan could not be confirmed under section 1129(a)(1) because section 503(b)(4) prohibited the Committee Members from recovering personal attorneys' fees for Committee-related work.  *Id.* at 9.  The parties agreed to sever the dispute from the plan confirmation process; section 6.7 was made subject to separate court approval and the remainder of the plan was confirmed.  Dkt. 22737 at 83; Dkt. 23023 at 56.

The Committee Members then filed an omnibus application requesting approximately $26,000,000 for their personal attorneys' fees and expenses (collectively, "fees").  Dkt. 24762; Dkt. 24881.  They requested approximately $4,200,000 for in-house counsel, $20,900,000 for outside counsel, and $932,148 in expenses for both, as follows:

| Committee Member | Professional | Fees | Expenses | Total Fees and Expenses |
|---|---|---|---|---|
| **Wilmington Trust Company** | In-House Staff | $2,569,577.50 | $696,949.14 | $3,266,526.64 |
| | Loeb & Loeb | $394,029.00 | $8,208.25 | $402,237.25 |
| | Covington & Burling | $7,788,744.00 | $68,759.56 | $7,857,503.56 |
| | Citibank | $96,000.00 | $0 | $96,000.00 |
| **The Bank of NY Mellon** | In-House Administration Fee | $490,740.00 | $0 | $490,740.00 |
| | Sheppard Mullin | $4,054,024.45 | $35,519.86 | $4,089,544.31 |
| **Mizuho Corporate Bank, Ltd.** | Stroock & Stroock & Lavan | $2,863,196.00 | $17,742.29 | $2,880,938.29 |
| **The Vanguard Group** | Arent Fox | $1,346,234.50 | $21,221.17 | $1,367,455.67 |
| **U.S. Bank N.A.** | In-House Personnel | $1,051,412.50 | $0 | $1,051,412.50 |
| | Shipman & Goodwin | $111,232.50 | $1,217.06 | $112,449.56 |
| | Edwards Angell Palmer & Dodge | $64,796.00 | $2,721.33 | $67,517.33 |
| | Sullivan Worcester | $1,752,369.00 | $12,928.39 | $1,765,297.39 |
| **Elliott Management Corp.** | Greenberg Traurig | $1,308,655.60 | $53,841.86 | $1,362,497.46 |
| | Kleinberg Kaplan Wolff & Cohen | $1,142,094.00 | $11,425.69 | $1,153,519.69 |
| **Shinsei Bank, Limited** | Vinson & Elkins | $71,460.00 | $1,614.06 | $73,074.06 |
| **Grand Total** | | $25,104,565.05 | $932,148.66 | $26,036,713.71 |

The Committee Members argued that the bankruptcy court could approve their fees as administrative expense payments under section 6.7 of the plan because the court need only find the payments "reasonable" under section 1129(a)(4).  Dkt. 24762 at 7.  And they alleged that their fees were reasonable because the "Committee Members would not have been able to undertake [their] responsibilities without the assistance of individual counsel, even given the competent guidance from the Committee's professionals."  *Id.* at 12-13.  To support their efforts to get the $26,000,000 in fees, the Committee Members submitted virtually identical declarations that described **(a)** the Committee Member's role on the Committee, **(b)** how the Committee Member "would not have been able to undertake any of the foregoing responsibilities without the assistance of counsel" and **(c)** how the Committee Member worked "side-by-side with its fellow Committee Members" to review various transactions, litigate various proceedings, and participate in plan negotiations.  *Id.* at 31-134.

 "[B]ased upon the same facts and circumstances proffered in support of the approval of the [fees] under section 1129(a)(4)," the Committee Members alternatively argued that they made a "substantial contribution" to the case under section 503(b)(3)(D) and thus could recover personal attorneys' fees for Committee-related work under section 503(b)(4).  *Id.* at 16.

The United States Trustee opposed the Committee Members' request, arguing that **(a)** section 503(b)(4) specifically prohibited the Committee Members from recovering personal attorneys' fees, **(b)** the Committee Members could not receive attorneys' fees for Committee-related work under sections 503(b)(3)(D) and 503(b)(4), and **(c)** section 1129(a)(4) did not provide an independent basis for authorizing the payment of an administrative expense inconsistent with section 503(b).  Dkt. 25394 at 12, 22.

**IV.   The court awards $26,000,000 in personal attorneys' fees under section 1129(a)(4).**

The bankruptcy court entered its order authorizing the fees on February 15, 2013.  Dkt. 34720.  The court assumed, without deciding, that "payment of such counsel fees, in the ordinary course, would not be allowable as administrative expenses." [6]  *Id.* at 5.  Rather, the court stated that the "question presented is . . . whether a plan legitimately may provide for payment of the legal expenses of individual members of an official committee if the very same sort of expenses would not have been payable if sought as part of the process of allowing administrative expenses." *Id.* at 6.  "Stated differently, can a plan properly circumvent the apparent restrictions on administrative expense treatment for professional compensation claims of this sort?" *Id.* at 6-7.  The court concluded that it could.  *Id.* at 7.

The court reasoned that section 1129(a)(4) provided an independent basis for allowing the fees under the plan.  *Id.* at 16.  According to the court, "[t]he fact that administrative claim status [under section 503(b)] may not be allowed does not mean that an agreed payment under a fully consensual plan should not be permitted."  *Id.* at 17.  Instead, the court believed that "confirmation of the Plan substitutes all of the protections that are needed" under the Bankruptcy Code, so payments under a plan "need only to be subjected to the Court's approval as 'reasonable' under Section 1129(a)(4)." *Id.*  This appeal followed.[7]  Dkt. 35661.

---

[6]  The court declined to rule on the Committee Members' substantial contribution claims under sections 503(b)(3)(D) and 503(b)(4) because it held that it could independently authorize the fees under section 1129(a)(4).  Dkt. 34720 at 5 n.4, 14 n.7.

[7]  The United States Trustee also objected to the reasonableness of the payments.  Dkt. 25394 at 27-46.  Although the bankruptcy court expressly reserved ruling on that objection until a later date, Dkt. 34720 at 9, the United States Trustee withdrew the objection prior to filing the notice of appeal.  Dkt. 35661.  As such, the order on appeal is final because there is nothing left for the

## SUMMARY OF THE ARGUMENT

The Committee Members received $26,000,000 under section 6.7 of the plan to pay for their in-house and outside counsels' Committee-related work.  Dkt. 24762.  The Committee Members received those fees even though the court below conceded that the two sections of the Bankruptcy Code specifically addressing those fees, sections 503(b)(3)(F) and 503(b)(4), did not authorize them.  Dkt. 34720 at 5.  Its concession was unsurprising:  Congress amended section 503(b) in 2005 for the explicit purpose of categorically prohibiting committee members from recovering attorneys' fees for committee-related work.

What was surprising — and virtually unprecedented — was the decision to award those attorneys' fees notwithstanding the text of sections 103(a), 503(b), 1123(b)(6), and 1129(a)(1).  The court reasoned that the requirement that a plan comply with the "applicable provisions" of the Bankruptcy Code did not actually require the plan to comply with section 503(b) of the Bankruptcy Code.  Rather, the court asked if it could "circumvent the apparent restrictions on administrative expense[s]," Dkt. 34720 at 7, and held that it could:  "The fact that administrative claim status may not be allowed does not mean that an agreed payment under a fully consensual plan should not be permitted."  *Id.* at 17.  The court reached that conclusion by expansively interpreting section 1129(a)(4), which required the court to find that the plan's payments for "services, costs or expenses" were reasonable, as also authorizing the court to award payments otherwise prohibited by the Bankruptcy Code.  Dkt. 34720 at 8.

---

bankruptcy court to decide.  *Pfizer Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co.)*, 676 F.3d 45, 51 (2d Cir. 2012).

This newly-coined "alternative" procedure for allowing these administrative expenses cannot be reconciled with the Bankruptcy Code's text, so the order below should be reversed.

First, in direct conflict with the lower court's view, the Supreme Court in *United Student Aid Funds Inc. v. Espinosa*, 130 S. Ct. 1367 (2010) held that consent does not relieve the bankruptcy court of its statutory duty to deny confirmation of plan provisions that do not comply with the Bankruptcy Code.  Accordingly, the court below was required to apply section 503(b) and, because section 6.7 of the plan violated section 503(b), deny the $26,000,000 fee request.

Second, both the text of section 503(b) and the Second Circuit's resolution of a substantially similar issue in *Cushman & Wakefield of Connecticut, Inc. v. Keren Limited Partnership*, 189 F.3d 86 (2d Cir. 1999), demonstrate that section 503(b) is the applicable standard governing when committee members may recover personal attorneys' fees from the bankruptcy estate.  Under this law, the Committee Members here are prohibited from recovering their personal attorneys' fees for Committee-related work under sections 503(b)(3)(D), 503(b)(3)(F), and 503(b)(4).

Third, the leading bankruptcy treatise, *Collier*, and the Sixth Circuit's decision in *United States v. Schilling (In re Big Rivers Electric Corp.)*, 355 F.3d 415, 439 (6th Cir. 2004), agree that section 1129(a)(4) neither provides independent authority to allow payments inconsistent with section 503 nor supersedes other provisions of the Bankruptcy Code.  Instead, section 1129(a)(4), which the lower court relied on to ignore section 503(b), merely requires that the court find otherwise legal payments are reasonable.  Nothing in the text of section 1129(a)(4) can be reasonably read as overruling section 1129(a)(1), which requires that the "plan complies with the applicable provisions" of the Bankruptcy Code, and section 103(a), a provision that makes all of chapter 5, including section 503(b), applicable in chapter 11 cases.

Fourth, this proposed expansive reading of section 1129(a)(4) would nullify much of the Bankruptcy Code in chapter 11 cases with confirmed plans.  Although section 503 and other Bankruptcy Code provisions comprehensively control payments in bankruptcy, all of them could be ignored under the Committee Members' theory by funneling otherwise illegal payments through a plan.

Below, the Committee Members alternatively argued that they could recover personal attorneys' fees for Committee-related work as a substantial contribution payment under sections 503(b)(3)(D) and 503(b)(4).  But the court below did not find that the Committee Members made a substantial contribution under section 503(b)(3)(D) and did not award any fees under section 503(b)(4).  Nor could it have done so.  Sections 503(b)(3)(F) and 503(b)(4) are the specific provisions governing — and prohibiting — committee members from recovering personal attorneys' fees for committee-related work, so *Keren* prohibits the Committee Members here from relying on the general language of section 503(b)(3)(D) to evade that specific prohibition.

## ARGUMENT

**I.     In *Espinosa*, the Supreme Court held that bankruptcy courts must enforce the Bankruptcy Code at plan confirmation, even when no one objects.**

The bankruptcy court's first justification for refusing to apply section 503(b) was that the confirmation of a "fully consensual" plan "substitutes all of the protections" of the Bankruptcy Code.[8]  Dkt. 34720 at 7-8, 17.  But section 503(b) applies in chapter 11 cases and no provision in

---

[8]  Yet the plan here was not "fully consensual" because some creditors voted to reject the plan and the United States Trustee objected to the plan.  Dkt. 22743; Dkt. 21640.

the Bankruptcy Code makes section 1129(a)(1)'s command that a "plan compl[y] with the applicable provisions" of the Bankruptcy Code conditional on the parties' consent.

As the Supreme Court recently held in *Espinosa*, 130 S. Ct. at 1380-81, the bankruptcy court must always ensure that a plan complies with the Bankruptcy Code and may not approve an improper plan provision, even when no one objects. The Court ruled that a bankruptcy court should not have confirmed a chapter 13 plan that granted the debtor a discharge of student loan debt inconsistent with the statutory requirement that the debtor first obtain a judicial determination that repayment would constitute an undue hardship. *Id.*; *see* 11 U.S.C. § 523(a)(8) (excepting student loan debts from discharge unless the court finds undue hardship). In doing so, the Court overruled the Ninth Circuit's holding that a bankruptcy court may confirm a plan that contains unlawful provisions if no one objects.

The Court explained that 11 U.S.C. § 1325(a)(1), which authorizes the bankruptcy court to confirm a plan only if it complies with the "applicable provisions" of the Bankruptcy Code, "makes plain that bankruptcy courts have the authority — indeed the obligation — to direct a debtor to conform his plan to the requirements" of the Bankruptcy Code. *Espinosa*, 130 S. Ct. at 1380-81. Section 1325(a)(1), like its chapter 11 counterpart,[9] thus "*requires* bankruptcy courts to address and correct a defect in a debtor's proposed plan even if no creditor raises the issue." *Id.* at 1381 n.14 (emphasis in original). As a result, *Espinosa* establishes that a party cannot

---

[9] Although *Espinosa* concerned a plan under chapter 13 of the Bankruptcy Code, the provision at issue in *Espinosa* is virtually identical to its counterpart in chapter 11. *Compare* 11 U.S.C. § 1325(a)(1) (requiring that the plan comply with the "applicable provisions of this title") *with* 11 U.S.C. § 1129(a)(1) (requiring that the plan comply with the "applicable provisions of this title"). Accordingly, the Supreme Court's reasoning in *Espinosa* is fully applicable to chapter 11 cases.

obtain relief through a plan that would otherwise be prohibited under the Bankruptcy Code. *See In re Detweiler*, No. 09-63377, 2012 WL 5935343, at *3 (Bankr. N.D. Ohio Nov. 27, 2012) (denying plan confirmation under *Espinosa* and section 1129(a)(1) because the plan sought to provide a discharge inconsistent with 11 U.S.C. § 1141(d)(5)(A)); *cf. United Trucking Serv., Inc. v. Trailer Rental Co. (In re United Trucking Serv., Inc.)*, 851 F.2d 159, 161 n.2 (6th Cir. 1988) (stating that the court was required to determine whether a claim qualified as an administrative expense under section 503(b) notwithstanding the parties' stipulation on the issue).

**II.    The Committee Members could not recover the $26,000,000 in personal attorneys' fees as administrative expenses under section 6.7 of the plan because that provision did not comply with sections 503(b)(3)(F) and 503(b)(4) of the Bankruptcy Code.**

The bankruptcy court's second justification for refusing to apply section 503(b) was that it did not expressly prohibit the court from allowing the Committee Members' personal attorneys' fees under alternative methods, such as through a plan. Dkt. 34720 at 7-8, 14. But consistent with the statutory text and the Second Circuit's decision in *Keren*, 189 F.3d at 86, the bankruptcy court was required to evaluate — and ultimately deny — those attorneys' fees under sections 503(b)(3)(F) and 503(b)(4).

**A.    Congress specifically prohibited committee members from recovering personal attorneys' fees for committee-related work when it amended section 503(b)(4) in 2005.**

Section 503 of the Bankruptcy Code governs administrative expense payments from the bankruptcy estate. 11 U.S.C. §§ 103(a), 503(b). Under Second Circuit law, administrative expenses are to be "narrowly construed" and the party seeking an administrative expense has the burden of proving that the right to payment arises under section 503(b). *Supplee v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.)*, 479 F.3d 167, 172 (2d Cir. 2007) (Sotomayor, J.); *see Trs. of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986) (internal

13

quotation and citation omitted) ("If one claimant is to be preferred over others, the purpose should be clear from the statute."); *Gen. Am. Transp. Corp. v. Martin (In re Mid Region Petroleum, Inc.)*, 1 F.3d 1130, 1132 (10th Cir. 1993) ("For a claim to rise to the level of an administrative expense, it must fit within one of the categories listed in 11 U.S.C. § 503(b).").

The Bankruptcy Code enumerates nine circumstances in which parties may recover administrative expenses from the bankruptcy estate.  11 U.S.C. § 503(b)(1)-(9).  One provision specifically allows a member of an official committee to recover expenses "incurred in the performance of the duties of such committee."  11 U.S.C. § 503(b)(3)(F).

Prior to 2005, committee members could also recover personal attorneys' fees incurred in connection with their committee duties.  Section 503(b)(4) previously permitted:

> reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection.

11 U.S.C. § 503(b)(4) (2000) (amended 2005).  As committee members' expenses were allowed by section 503(b)(3)(F), their personal attorneys' fees could have been recovered under the pre-amendment text of section 503(b)(4).

But in 2005 Congress rewrote section 503(b)(4) to prevent committee members from recovering personal attorneys' fees for committee-related work.  It accomplished that by revising section 503(b)(4) to allow only:

> reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable **under subparagraph (A), (B), (C), (D), or (E) of paragraph (3)** of this subsection.

11 U.S.C. § 503(b)(4) (2006) (current version) (emphasis added).  Given that paragraph (3) only contains subparagraphs (A)-(F), excluding subparagraph (F) from that list was a specific solution for a specific problem.

14

Section 503(b)(4)'s legislative history confirms that Congress deliberately omitted subparagraph (F) from section 503(b)(4) to prohibit committee members from recovering personal attorneys' fees.  Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. No. 109-8, 119 Stat. 23, "to correct perceived abuses of the bankruptcy system."  *Milavetz, Gallop & Milavetz, P.A. v. United States*, 130 S. Ct. 1324, 1329 (2010).  As part of those reforms, Congress found it necessary "to limit the types of compensable professional services rendered by an attorney or accountant that can qualify as administrative expenses in a bankruptcy case."  H.R. Rep. No. 109-31, at 142 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 201.  Congress thus amended section 503(b)(4) so that "[e]xpenses for attorneys or accountants incurred by individual members of creditors' or equity security holders' committees are not recoverable but expenses incurred for such professional services incurred by such committees themselves would be."  *Id.*; *accord* 4 Collier on Bankruptcy ¶ 503.LH[3] (16th ed. 2010) (explaining that the 2005 amendment to section 503(b)(4) "correct[ed] a drafting error made during the 1994 Act, when section 503(b)(3)(F) was added," which had inadvertently allowed committee members to recover personal attorneys' fees for committee-related work).  Yet the plan here allows the Committee Members to recover exactly what Congress prohibited.  Dkt. 22737 at 14, 83.

Nothing in the statutory context or legislative history suggests that Congress intended for parties to nullify section 503(b)(4)'s limitation by simply deeming a payment to be an allowable section 503(b) administrative expense in a plan.  To the contrary, section 1129(a)(1) requires that the plan "compl[y]" with the Bankruptcy Code.  In turn, section 503(b) is the only statutory provision in the Bankruptcy Code that establishes a standard for allowing these expenses.  § 503(b); *Bethlehem Steel*, 479 F.3d at 172; *Mid Region Petroleum, Inc.*, 1 F.3d at 1132.  The

plain language of sections 103(a) and 503(b) do not limit section 503(b)'s applicability.  *See* 11 U.S.C. § 103(a); *Patterson v. Shumate*, 504 U.S. 753, 758 (1992).  Nor is there anything in the statutory context that supports modifying the scope of the statute.  *See Water Transp. Ass'n v. ICC*, 722 F.2d 1025, 1028-29 (2d Cir. 1983).  And because Congress specifically amended the statute to prohibit the fees allowed below, this Court should "presume [Congress] intends its amendment to have real and substantial effect."  *Stone v. INS*, 514 U.S. 386, 397 (1995); *see* H.R. Rep. No. 109-31, at 142.

### B. The Second Circuit's decision in *Keren* confirms that bankruptcy courts may not utilize a broad provision to overcome a specific limitation in section 503(b).

The plain meaning of the Bankruptcy Code's text is congruent with Second Circuit law prohibiting administrative expense claimants from authority shopping when they would otherwise be ineligible for compensation under a specific part of section 503(b).  And the Second Circuit's law is consistent with that of all other courts of appeals to have considered the question.

In *Keren*, a professional tried to use a broad provision to negate a specific limitation on a type of professional fees under section 503(b)(2).  The professional could not meet the requirements for a section 503(b)(2) award, so it argued that it could obtain the fees under section 503(b)(1)(A), a provision that more broadly authorized administrative expense payments.  *Keren*, 189 F.3d at 87-88.

Here, the Committee Members are specifically prohibited from recovering personal attorneys' fees under sections 503(b)(3)(F) and 503(b)(4) because those fees were incurred in connection with their duties as Committee Members.  For that reason, they argued that they could recover the fees under the broader language of sections 1129(a)(4) and 503(b)(3)(D) without satisfying the statutory standard.

16

The Second Circuit emphatically rejected that argument in *Keren*.  It held that a broadly worded provision of the Bankruptcy Code could not excuse the professional's noncompliance with the specific provision governing the administrative expense.  *Id.*  The Second Circuit reasoned that "[i]f a [professional] were able to be compensated under Section 503(b)(1)(A), it would render [the statutory prerequisite in section 503(b)(2)] nugatory."  *Id.* (internal modifications, quotation, and citation omitted).

*Keren* directs the outcome here.  Under the Second Circuit's methodology, which differs irreconcilably from the interpretative approach employed by the court below in this case, sections 503(b)(3)(F) and 503(b)(4) are the specific provisions that govern and — consistent with Congress's 2005 amendment — prohibit the Committee Members from recovering $26,000,000 in administrative expense payments for their Committee-related work.

*Keren* is not an anomaly.  The Third and Seventh Circuits agree that section 503(b)(1)'s general authorization does not provide independent authority to allow administrative expenses inconsistent with section 503(b)(2).  *In re Milwaukee Engraving Co.*, 219 F.3d 635, 637 (7th Cir. 2000); *F/S Airlease II, Inc. v. Simon (In re F/S Airlease II, Inc.)*, 844 F.2d 99, 108-09 (3d Cir. 1988).  In addition, the Third Circuit has similarly ruled that a bankruptcy court's general grant of equitable authority under 11 U.S.C. § 105(a) does not provide independent authority to grant administrative expense status to wage claims that do not qualify as administrative expenses under section 503(b)(1).  *Former Emps. of Builders Sq. Retail Stores v. Hechinger Inv. Co. of Del. (In re Hechinger Inv. Co. of Del.)*, 298 F.3d 219, 228 (3d Cir. 2002).

Those circuit cases posed the same fundamental question that is before this Court:  May a bankruptcy court ignore a specific limitation on administrative expenses under section 503(b) by

obtaining the prohibited result under a more broadly worded provision?  Every circuit court that has considered the question — the Second, Third, and Seventh Circuits — answered: "No."

Their conclusions are consistent with the Supreme Court's recent bankruptcy decision in *RadLAX Gateway Hotel, LLC v. Amalagamated Bank*, 132 S. Ct. 2065, 2071 (2012).  There, the Supreme Court, like the Second Circuit in *Keren*, held that "general language of a [Bankruptcy Code] statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment."  *Id.* (internal quotation, citation, and modification omitted).  The Court further explained that this rule "is particularly true where … Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions."  *Id.* (internal quotation and citation omitted).  So too here, where Congress has enacted section 503(b) to govern administrative expense payments from the bankruptcy estate.

*Keren* and *RadLAX* are determinative here.  Congress has enacted a comprehensive scheme governing the allowance of administrative expenses.  11 U.S.C. § 503.  A 2005 law intended "to correct perceived abuses of the bankruptcy system," *Milavetz*, 130 S. Ct. at 1329, specifically amended section 503(b)(4) so that "[e]xpenses for attorneys or accountants incurred by individual members of creditors' or equity security holders' committees are not recoverable."  H.R. Rep. No. 109-31, at 142 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 201.  As such, if a committee member could recover administrative expenses for personal attorneys' fees under a plan notwithstanding section 503(b)(4)'s specific limitation, it would render Congress's 2005 amendment "nugatory" in any chapter 11 case with a plan and thus contravene Congress's specific intent to prohibit those fees.  *See RadLAX*, 132 S. Ct. at 2071; *Keren*, 189 F.3d at 88.

18

In this case, the record demonstrates that the attorneys' fees at issue are governed by the provisions of sections 503(b)(3)(F) and 503(b)(4). The Committee Members' papers, and their declarations sworn under penalty of perjury, establish that the fees were for services provided to individual Committee Members in connection with their official duties. Dkt. 24762 at 12-13, 31-134. They then sought to have those fees paid as "Administrative Expense Claims" under the plan, which expressly incorporated section 503(b)'s requirements for allowing administrative expenses and section 507's heightened payment priority. Dkt. 22737 at 14; Dkt. 24762.

As a result, the Committee Members may not recover their personal attorneys' fees for Committee-related work under section 1129(a)(4)'s broad language or as a substantial contribution under section 503(b)(3)(D) because general provisions do not apply to a matter addressed by a specific provision. *RadLAX*, 132 S. Ct. at 2071; *Keren*, 189 F.3d at 88. The fees were of a type specifically addressed by sections 503(b)(3)(F) and 503(b)(4), so the plan must have complied with those provisions. And because the plan did not comply with those provisions, the order below must be reversed. *Espinosa*, 130 S. Ct. at 1380-81.

### C.  Alternatively, the bankruptcy court could not have allowed the fees as a substantial contribution under sections 503(b)(3)(D) and 503(b)(4).

Although the bankruptcy court did not decide the Committee Members' section 503(b)(3)(D) substantial contribution request, should this Court decide to reach the issue, the record would not support affirming on that basis. First, for the reasons stated above, *Keren* and *RadLAX* prohibit it. As the Committee Members' declarations explained in great detail, they sought fees for Committee-related work. Dkt. 24762 at 12-13, 31-134. Indeed, the Committee Members sought relief as a group and were, like now, represented by Milbank, the Committee's court-approved counsel. But, because sections 503(b)(3)(F) and 503(b)(4) govern such requests,

19

*Keren* and *RadLAX* required the Committee Members to establish a right under those provisions of the Bankruptcy Code. They could not, however, because Congress took that right away when it amended section 503(b)(4) in 2005.

Second, the bankruptcy court did not find that the Committee Members made a substantial contribution, which is a condition precedent to any award under section 503(b)(3)(D). *Lebron v. Mechem Fin., Inc.*, 27 F.3d 937, 946 (3d Cir. 1994); *In re Best Prods. Co.*, 173 B.R. 862, 865-66 (Bankr. S.D.N.Y. 1994). Just as the absence of an "undue hardship" finding led the Supreme Court to conclude the bankruptcy court should not have confirmed the plan in *Espinosa*, 130 S. Ct. at 1381, the absence of a substantial contribution finding would prevent payment under the plan here — even if the law were different and allowed the Committee Members to recover for Committee-related work under sections 503(b)(3)(D) and 503(b)(4).

**III. Section 1129 does not authorize the bankruptcy court to award attorneys' fees prohibited under section 503(b)(4).**

The bankruptcy court's third justification for refusing to apply section 503(b) was that it had separate and independent authority to "approve" the fees under section 1129(a)(4). Dkt. 34720 at 8. But section 1129 neither provides independent authority for the bankruptcy court to award attorneys' fees nor supersedes other provisions of the Bankruptcy Code in the plan confirmation process. Yet, even if section 1129(a)(4) conferred such authority in some context — and it does not — the bankruptcy court still could not use that authority to negate section 503(b)(4)'s specific prohibition.

**A. The text of section 1129 does not authorize the bankruptcy court to do anything more than confirm a plan if the statutory requirements are met.**

The operative language in section 1129(a) authorizes a bankruptcy court to do one thing — "confirm a plan only if" all sixteen statutory requirements are met. 11 U.S.C. § 1129(a). The

20

first requirement is that "the plan complies with the applicable provisions of this title." 11 U.S.C.

§ 1129(a)(1).  In turn, section 1129(a)(4) constitutes a type of finding that the bankruptcy court

must make before confirming a plan.  11 U.S.C. § 1129(a)(4).  It requires only that a payment

"made or to be made . . . for services or for costs and expenses" in connection with the case "has

been approved by, or is subject to the approval of, the court as reasonable."  *Id.*

Section 1129(a)(4)'s text does not authorize a committee member to recover, or for a

court to allow, personal attorneys' fees from the bankruptcy estate outside of section 503(b).

Nor does section 1129(a)(4)'s text modify the requirement in section 1129(a)(1) that the plan

must "compl[y]" with the Bankruptcy Code.

The Second Circuit has never interpreted section 1129(a)(4).  But, as explained by

*Collier*, which is the leading treatise on bankruptcy law, section 1129(a)(4) serves as a safety net

— although the reasonableness of most fees and costs will typically "be the subject of other

bankruptcy sections . . . in some cases there will be fees and costs to parties not always subject"

to reasonableness review, such as "fees payable to financing institutions as part of plan funding."

7 Collier on Bankruptcy ¶ 1129.02[4] (16th ed. 2010).  Section 1129(a)(4) thus requires that the

bankruptcy court have the opportunity to ensure that the amount of any properly authorized

payment made in connection with the case is reasonable.  *Id.*; *see also United States v. Schilling*

*(In re Big Rivers Elec. Corp.)*, 355 F.3d 415, 439 (6th Cir. 2004); *Mabey v. Sw. Elec. Power Co.*

*(In re Cajun Elec. Power Coop., Inc.)*, 150 F.3d 503 (5th Cir. 1998); *In re Draiman*, 450 B.R.

777, 808 (Bankr. N.D. Ill. 2011); *In re TCI 2 Holdings, LLC*, 428 B.R. 117, 146-47 (Bankr.

D.N.J. 2010); *In re Texaco, Inc.*, 84 B.R. 893, 907-08 (Bankr. S.D.N.Y. 1988).

The only court of appeals to have considered whether section 1129(a)(4) may authorize

payments inconsistent with substantive bankruptcy provisions is the Sixth Circuit, which held

21

that nothing "suggests that 1129(a)(4) excuses [a recipient of funds] from other requirements of the Code." *Big Rivers*, 355 F.3d at 439.  In *Big Rivers*, the fee recipient was an examiner, whose fees were governed by sections 330(a)(1) and 503(b)(2) of the Bankruptcy Code.  Here, the recipients are committee members, whose rights to recover personal attorneys' fees for committee-related work are governed by sections 503(b)(3)(F) and 503(b)(4) — rights that Congress took away in 2005 when it amended section 503(b)(4) to prohibit the very fees that the Committee Members now seek under section 1129(a)(4).  *See supra* at Part I.B.  And just as the examiner in *Big Rivers* could not use section 1129(a)(4) to "authorize" fees inconsistent with other statutory requirements, the Committee Members here may not use section 1129(a)(4) to "authorize" administrative expense payments that do not comply with section 503(b)(4).  *Big Rivers*, 355 F.3d at 439.[10]

The court below drew support from only one bankruptcy case, *In re Adelphia Communications Corp.*, 441 B.R. 6 (Bankr. S.D.N.Y. 2010).  *Adelphia*, however, involved a payment to creditors who were members of an unofficial ad hoc committee — not members of an official committee whose fees are governed by sections 503(b)(3)(F) and 503(b)(4).  And *Adelphia* identified no statutory text or legislative history that reasonably support concluding that *Collier's* and the Sixth Circuit's interpretation of section 1129(a)(4) is wrong.

---

[10]  The Sixth Circuit relied upon the Fifth Circuit's decision in *Cajun*.  *See Big Rivers*, 355 F.3d at 439.  In *Cajun*, however, the Fifth Circuit addressed the timing of the section 1129(a)(4) reasonableness review for payments that a third party made to individual creditors.  *Cajun*, 150 F.3d at 515.  *Cajun* did not address section 503(b).

**B.      Section 1129(a)(4) neither abrogates the applicability of the Bankruptcy Code under section 103(a) nor authorizes a bankruptcy court to confirm a plan that violates section 1129(a)(1)'s compliance requirement.**

Even if section 1129(a)(4) provided an independent basis for awarding fees — and it does not — the bankruptcy court still could not have confirmed the plan provision below.[11]  Section 1129(a)(1) required the bankruptcy court to find that the "plan complies with the applicable provisions" of the Bankruptcy Code.   Section 103(a), entitled "applicability of chapters," establishes that "chapters 1, 3, and 5 of this title apply in" chapter 11 cases, subject to an exception not relevant here.  11 U.S.C. § 103(a).  And because section 103(a) already contains an express exception, it is an elementary tenet of statutory construction that courts should not "create additional, implied exceptions," like the court below did in carving out an exception for plan confirmation.  *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 87-88 (2006).

Accordingly, section 103(a) made section 503(b) applicable under section 1129(a)(1).  As a result, the bankruptcy court was required to find that the plan complied with section 503(b).  The bankruptcy court could not ignore this statutory requirement under *Espinosa*.  *See supra* at Part I.  And the Supreme Court's recent decision in *RadLAX*, like the Second Circuit's ruling in *Keren*, prohibits relying on the general language of section 1129(a)(4) to confirm a plan over a more specific limitation — in this case, section 1129(a)(1)'s incorporation of section 503(b).  *RadLAX*, 130 S. Ct. at 2071; *see supra* at Part I.B.

---

[11]  The bankruptcy court did not discuss sections 103(a) and 1129(a)(1) when it determined that it need not apply section 503(b).  Dkt. 34720 at 15-18.  It did mention 11 U.S.C. § 1123(b)(6), which allows a proposed plan to include "any appropriate provision" that is "not inconsistent with the applicable provisions of title 11."  *Id.*  Section 1123(b)(6), however, does not allow a plan to include an illegal provision.

**IV.    The bankruptcy court's "alternative" procedure has no limiting principle.**

The bankruptcy court's belief that a plan must be "endlessly adaptable" and that the "free expression of plan proponents should not be restrained," Dkt 34720 at 9, is irreconcilable with the Supreme Court's holding in *Espinosa* that the Bankruptcy Code governs, even when the parties consent to a different treatment.  Like the Supreme Court, Congress has long eschewed bankruptcy as a free-for-all subject only to the caprice of the parties.  *See Dish Network Corp. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.)*, 634 F.3d 79, 100 (2d Cir. 2011) (observing that "Congress was well aware of both [the] benefits and disadvantages" when it codified restrictions on the ability of senior creditors to negotiate away payments under a plan to junior creditors).

Numerous specific provisions of the Bankruptcy Code establish what parties may do; the lower court's expansive interpretation of section 1129(a)(4) would undermine those carefully crafted congressional compromises.  The following are but two examples of how a "consent" exception would lead to results wholly inconsistent with the Bankruptcy Code.    First, professionals that assist with the reorganization of the bankruptcy estate are subject to comprehensive disclosure, retention, and compensation requirements.  *See* 11 U.S.C. §§ 327-331, 503(b)(2), 1103; Fed. R. Bankr. P. 2014, 2016.  It would eviscerate Congress's regulatory scheme if, with the debtor's consent, professionals could simply opt out of those restraints and instead recover through a plan.  *See Big Rivers*, 355 F.3d at 432-35.  Second, section 503(c) strictly limits the debtor's ability to pay voluntary retention bonuses and severance payments to insiders.  11 U.S.C. § 503(c)(1)-(2).  And so bankruptcy courts have regularly struck down bonus plans for insiders that fail to comply with section 503(c), even when they had the full support of the debtors and major creditors.  *See, e.g.*, *In re Residential Capital, LLC*, 478 B.R. 154 (Bankr. S.D.N.Y. 2012); *In re Hawker Beechcraft, Inc.*, 479 B.R. 308 (Bankr. S.D.N.Y. 2012).  If section

24

503(c) could be ignored at plan confirmation, then corporate insiders could use the plan to replace section 503(c)'s strict requirements with a more relaxed reasonableness standard.

If anything, this case reinforces the Second Circuit's concern about the potential "for serious mischief" among the debtor and various creditor groups if left unconstrained by the legislative choices Congress made in enacting the Bankruptcy Code. *Dish Network*, 634 F.3d at 100 (discussing the absolute priority rule of 11 U.S.C. § 1129(b)(2)(B)). Here, these Committee Members — who, by serving on the committee, **(a)** were able to retain the most sophisticated legal counsel in the world, at the bankruptcy estate's expense, and **(b)** were given a privileged role in helping develop the case — would be able to "jump to the head of the line." *In re S & Y Enters.*, 480 B.R. 452, 458 (Bankr. E.D.N.Y. 2012).

If the bankruptcy court correctly reasoned that the plan confirmation process was sufficient to "substitute all of the protections" of the Bankruptcy Code, Dkt. 34720 at 17, then plan proponents with sufficient creditor support could upset the many compromises Congress struck in the Bankruptcy Code — and thus undermine, or remove entirely, the congressionally mandated protections for objectors or disfavored parties — subject only to the bankruptcy court's review for reasonableness. That type of frontier justice is not the bankruptcy system that Congress created, so the order entered below should be reversed.

## CONCLUSION

For these reasons, the United States Trustee respectfully asks this Court to reverse the order entered below.

Respectfully submitted,

TRACY HOPE DAVIS
United States Trustee for Region 2

Dated:  May 1, 2013

By      /s/ Noah M. Schottenstein
        Noah M. Schottenstein
        Trial Attorney

RAMONA D. ELLIOTT                    TRACY HOPE DAVIS
Deputy Director/General Counsel      United States Trustee for Region 2
P. MATTHEW SUTKO                     LINDA A. RIFFKIN
Associate General Counsel            Assistant United States Trustee
NOAH M. SCHOTTENSTEIN               SUSAN D. GOLDEN
Trial Attorney                       Trial Attorney

Department of Justice                Department of Justice
Executive Office for                 Office of the United States Trustee
  United States Trustees             33 Whitehall Street
441 G Street, NW,                    21st Floor
Suite 6150                           New York, NY 10004
Washington, DC 20530                 Tel: (212) 510-0500
                                     Fax: (212) 668-2255

## CERTIFICATE OF SERVICE

I certify that on May 1, 2013, I served the foregoing BRIEF OF APPELLANT TRACY

HOPE DAVIS, UNITED STATES TRUSTEE via the CM/ECF Electronic Filing system and

electronic mail on the following:

| | |
|---|---|
| Matthew J. Gold<br>Kleinberg, Kaplan, Wolff & Cohen, P.C.<br>551 Fifth Avenue<br>New York, NY 10176<br>Email: mgold@kkwc.com<br>*Attorney for Elliott Management Corp.* | Russell Lowell Reid<br>Sheppard Mullin Richter & Hampton LLP<br>30 Rockerfeller Plaza<br>New York, NY 10112<br>Email: russell.reid@hellerehrman.com<br>*Attorney for The Bank of New York Mellon* |
| Mark A. Speiser<br>Stroock & Stroock & Lavan<br>Seven Hanover Square<br>New York, NY 10004<br>Email: mspeiser@stroock.com<br>*Attorney for Mizuho Corporate Bank, Ltd.* | David L Dubrow<br>Arent Fox LLP<br>1675 Broadway<br>New York, NY 10019<br>Email: dubrow.david@arentfox.com<br>*Attorney for The Vanguard Group* |
| Dov R. Kleiner<br>Vinson & Elkins LLP<br>666 Fifth Avenue, 26th Floor<br>New York, NY 10103<br>Email: dkleiner@velaw.com<br>*Attorney for Shinsei Bank, Limited* | Michael B. Hopkins<br>Covington & Burling LLP<br>620 Eighth Avenue<br>New York, NY 10018-1405<br>Email: mhopkins@cov.com<br>*Attorney for Wilmington Trust Company* |
| Richard Hiersteiner<br>Sullivan & Worchester LLP<br>One Post Office Square<br>Boston, MA 02109<br>Email: rhiersteiner@sandw.com<br>*Attorney for U.S. Bank National Association* | Dennis F. Dunne<br>Milbank, Tweed, Hadley & McCloy LLP<br>1 Chase Manhattan Plaza<br>New York, NY 10005<br>Email: ddunne@milbank.com<br>*Attorney for the Official Committee of*<br>*Unsecured Creditors* |
| Harvey R. Miller<br>Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>Email: harvey.miller@weil.com<br>*Attorney for the Debtors* | Garrett Fail<br>Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>Email: garrett.fail@weil.com<br>*Attorney for the Debtors* |

/s/ Noah M. Schottenstein
Noah M. Schottenstein
Trial Attorney

**STATUTORY APPENDIX**

Effective Date of 1984 Amendment

Amendment by Pub. L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a) of Pub. L. 98–353, set out as a note under section 101 of this title.

## § 1128. Confirmation hearing

(a) After notice, the court shall hold a hearing on confirmation of a plan.

(b) A party in interest may object to confirmation of a plan.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2635.)

Historical and Revision Notes

Senate Report No. 95–989

[Section 1129 (enacted as section 1128)] Subsection (a) requires that there be a hearing in every case on the confirmation of the plan. Notice is required.

Subsection (b) permits any party in interest to object to the confirmation of the plan. The Securities and Exchange Commission and indenture trustees, as parties in interest under section 1109, may object to confirmation of the plan.

## § 1129. Confirmation of plan

(a) The court shall confirm a plan only if all of the following requirements are met:

(1) The plan complies with the applicable provisions of this title.

(2) The proponent of the plan complies with the applicable provisions of this title.

(3) The plan has been proposed in good faith and not by any means forbidden by law.

(4) Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

(5)(A)(i) The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and

(ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and

(B) the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

(6) Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.

(7) With respect to each impaired class of claims or interests—

(A) each holder of a claim or interest of such class—

(i) has accepted the plan; or

(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date; or

(B) if section 1111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

(8) With respect to each class of claims or interests—

(A) such class has accepted the plan; or

(B) such class is not impaired under the plan.

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—

(A) with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(B) with respect to a class of claims of a kind specified in section 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, each holder of a claim of such class will receive—

(i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim;

(C) with respect to a claim of a kind specified in section 507(a)(8) of this title, the holder of such claim will receive on account of such claim regular installment payments in cash—

(i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;

(ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and

(iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b)); and

(D) with respect to a secured claim which would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8), but for the secured status of that claim, the holder of that claim will receive on account of that claim, cash payments, in the same manner and over the same period, as prescribed in subparagraph (C).

(10) If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan,

determined without including any acceptance of the plan by any insider.

(11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

(12) All fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan.

(13) The plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of this title, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of this title, at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits.

(14) If the debtor is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, the debtor has paid all amounts payable under such order or such statute for such obligation that first become payable after the date of the filing of the petition.

(15) In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan—

(A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

(16) All transfers of property under the plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

(b)(1) Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

(A) With respect to a class of secured claims, the plan provides—

(i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

(B) With respect to a class of unsecured claims—

(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.

(C) With respect to a class of interests—

(i) the plan provides that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or

(ii) the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

(c) Notwithstanding subsections (a) and (b) of this section and except as provided in section 1127(b) of this title, the court may confirm only one plan, unless the order of confirmation in the case has been revoked under section 1144 of this title. If the requirements of subsections (a) and (b) of this section are met with respect to more than one plan, the court shall consider the preferences of creditors and equity security holders in determining which plan to confirm.

(d) Notwithstanding any other provision of this section, on request of a party in interest that is a governmental unit, the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933. In any hearing under this subsection, the governmental unit has the burden of proof on the issue of avoidance.

(e) In a small business case, the court shall confirm a plan that complies with the applicable

provisions of this title and that is filed in accordance with section 1121(e) not later than 45 days after the plan is filed unless the time for confirmation is extended in accordance with section 1121(e)(3).

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2635; Pub. L. 98–353, title III, §512, July 10, 1984, 98 Stat. 386; Pub. L. 99–554, title II, §§225, 283(v), Oct. 27, 1986, 100 Stat. 3102, 3118; Pub. L. 100–334, §2(b), June 16, 1988, 102 Stat. 613; Pub. L. 103–394, title III, §304(h)(7), title V, §501(d)(32), Oct. 22, 1994, 108 Stat. 4134, 4146; Pub. L. 109–8, title II, §213(1), title III, §321(c), title IV, §438, title VII, §710, title XII, §1221(b), title XV, §1502(a)(8), Apr. 20, 2005, 119 Stat. 52, 95, 113, 127, 196, 216; Pub. L. 111–327, §2(a)(35), Dec. 22, 2010, 124 Stat. 3561.)

HISTORICAL AND REVISION NOTES

LEGISLATIVE STATEMENTS

Section 1129 of the House amendment relates to confirmation of a plan in a case under chapter 11. Section 1129(a)(3) of the House amendment adopts the position taken in the Senate amendment and section 1129(a)(5) takes the position adopted in the House bill. Section 1129(a)(7) adopts the position taken in the House bill in order to insure that the dissenting members of an accepting class will receive at least what they would otherwise receive under the best interest of creditors test; it also requires that even the members of a class that has rejected the plan be protected by the best interest of creditors test for those rare cramdown cases where a class of creditors would receive more on liquidation than under reorganization of the debtor. Section 1129(a)(7)(C) is discussed in connection with section 1129(b) and section 1111(b). Section 1129(a)(8) of the House amendment adopts the provision taken in the House bill which permits confirmation of a plan as to a particular class without resort to the fair and equitable test if the class has accepted a plan or is unimpaired under the plan.

Section 1129(a)(9) represents a compromise between a similar provision contained in the House bill and the Senate amendment. Under subparagraph (A) claims entitled to priority under section 507(a)(1) or (2) are entitled to receive cash on the effective date of the plan equal to the amount of the claim. Under subparagraph (B) claims entitled to priority under section 507(a)(3), (4), or (5), are entitled to receive deferred cash payments of a present value as of the effective date of the plan equal to the amount of the claims if the class has accepted the plan or cash payments on the effective date of the plan otherwise. Tax claims entitled to priority under section 507(a)(6) of different governmental units may not be contained in one class although all claims of one such unit may be combined and such unit may be required to take deferred cash payments over a period not to exceed 6 years after the date of assessment of the tax with the present value equal to the amount of the claim.

Section 1129(a)(10) is derived from section 1130(a)(12) of the Senate amendment.

Section 1129(b) is new. Together with section 1111(b) and section 1129(a)(7)(C), this section provides when a plan may be confirmed, notwithstanding the failure of an impaired class to accept the plan under section 1129(a)(8). Before discussing section 1129(b) an understanding of section 1111(b) is necessary. Section 1111(b)(1), the general rule that a secured claim is to be treated as a recourse claim in chapter 11 whether or not the claim is nonrecourse by agreement or applicable law. This preferred status for a nonrecourse loan terminates if the property securing the loan is sold under section 363 or is to be sold under the plan.

The preferred status also terminates if the class of which the secured claim is a part elects application of section 1111(b)(2). Section 1111(b)(2) provides that an al-

lowed claim is a secured claim to the full extent the claim is allowed rather than to the extent of the collateral as under section 506(a). A class may elect application of paragraph (2) only if the security is not of inconsequential value and, if the creditor is a recourse creditor, the collateral is not sold under section 363 or to be sold under the plan. Sale of property under section 363 or under the plan is excluded from treatment under section 1111(b) because of the secured party's right to bid in the full amount of his allowed claim at any sale of collateral under section 363(k) of the House amendment.

As previously noted, section 1129(b) sets forth a standard by which a plan may be confirmed notwithstanding the failure of an impaired class to accept the plan.

Paragraph (1) makes clear that this alternative confirmation standard, referred to as "cram down," will be called into play only on the request of the proponent of the plan. Under this cramdown test, the court must confirm the plan if the plan does not discriminate unfairly, and is "fair and equitable," with respect to each class of claims or interests that is impaired under, and has not accepted, the plan. The requirement of the House bill that a plan not "discriminate unfairly" with respect to a class is included for clarity; the language in the House report interpreting that requirement, in the context of subordinated debentures, applies equally under the requirements of section 1129(b)(1) of the House amendment.

Although many of the factors interpreting "fair and equitable" are specified in paragraph (2), others, which were explicated in the description of section 1129(b) in the House report, were omitted from the House amendment to avoid statutory complexity and because they would undoubtedly be found by a court to be fundamental to "fair and equitable" treatment of a dissenting class. For example, a dissenting class should be assured that no senior class receives more than 100 percent of the amount of its claims. While that requirement was explicitly included in the House bill, the deletion is intended to be one of style and not one of substance.

Paragraph (2) provides guidelines for a court to determine whether a plan is fair and equitable with respect to a dissenting class. It must be emphasized that the fair and equitable requirement applies only with respect to dissenting classes. Therefore, unlike the fair and equitable rule contained in chapter X [chapter 10 of former title 11] and section 77 of the Bankruptcy Act [section 205 of former title 11] under section 1129(b)(2), senior accepting classes are permitted to give up value to junior classes as long as no dissenting intervening class receives less than the amount of its claims in full. If there is no dissenting intervening class and the only dissent is from a class junior to the class to which value have been given up, then the plan may still be fair and equitable with respect to the dissenting class, as long as no class senior to the dissenting class has received more than 100 percent of the amount of its claims.

Paragraph (2) contains three subparagraphs, each of which applies to a particular kind of class of claims or interests that is impaired and has not accepted the plan. Subparagraph (A) applies when a class of secured claims is impaired and has not accepted the plan. The provision applies whether or not section 1111(b) applies. The plan may be crammed down notwithstanding the dissent of a secured class only if the plan complies with clause (i), (ii), or (iii).

Clause (i) permits cramdown if the dissenting class of secured claims will retain its lien on the property whether the property is retained by the debtor or transferred. It should be noted that the lien secures the allowed secured claim held by such holder. The meaning of "allowed secured claim" will vary depending on whether section 1111(b)(2) applies to such class.

If section 1111(b)(2) applies then the "electing" class is entitled to have the entire allowed amount of the debt related to such property secured by a lien even if the value of the collateral is less than the amount of

the debt. In addition, the plan must provide for the holder to receive, on account of the allowed secured claims, payments, either present or deferred, of a principal face amount equal to the amount of the debt and of a present value equal to the value of the collateral.

For example, if a creditor loaned $15,000,000 to a debtor secured by real property worth $18,000,000 and the value of the real property had dropped to $12,000,000 by the date when the debtor commenced a proceeding under chapter 11, the plan could be confirmed notwithstanding the dissent of the creditor as long as the lien remains on the collateral to secure a $15,000,000 debt, the face amount of present or extended payments to be made to the creditor under the plan is at least $15,000,000, and the present value of the present or deferred payments is not less than $12,000,000. The House report accompanying the House bill described what is meant by "present value".

Clause (ii) is self explanatory. Clause (iii) requires the court to confirm the plan notwithstanding the dissent of the electing secured class if the plan provides for the realization by the secured class of the indubitable equivalents of the secured claims. The standard of "indubitable equivalents" is taken from *In re Murel Holding Corp.*, 75 F.2d 941 (2d Cir. 1935) (Learned Hand, Jr.).

Abandonment of the collateral to the creditor would clearly satisfy indubitable equivalence, as would a lien on similar collateral. However, present cash payments less than the secured claim would not satisfy the standard because the creditor is deprived of an opportunity to gain from a future increase in value of the collateral. Unsecured notes as to the secured claim or equity securities of the debtor would not be the indubitable equivalent. With respect to an oversecured creditor, the secured claim will never exceed the allowed claim.

Although the same language applies, a different result pertains with respect to a class of secured claims to which section 1111(b)(2) does not apply. This will apply to all claims secured by a right of setoff. The court must confirm the plan notwithstanding the dissent of such a class of secured claims if any of three alternative requirements is met. Under clause (i) the plan may be confirmed if the class retains a right of setoff or a lien securing the allowed secured claims of the class and the holders will receive payments of a present value equal to the allowed amount of their secured claims. Contrary to electing classes of secured creditors who retain a lien under subparagraph (A)(i)(I) to the extent of the entire claims secured by such lien, nonelecting creditors retain a lien on collateral only to the extent of their allowed secured claims and not to the extent of any deficiency, and such secured creditors must receive present or deferred payments with a present value equal to the allowed secured claim, which in turn is only the equivalent of the value of the collateral under section 506(a).

Any deficiency claim of a nonelecting class of secured claims is treated as an unsecured claim and is not provided for under subparagraph (A). The plan may be confirmed under clause (ii) if the plan proposes to sell the property free and clear of the secured party's lien as long as the lien will attach to the proceeds and will receive treatment under clause (i) or (iii). Clause (iii) permits confirmation if the plan provides for the realization by the dissenting nonelecting class of secured claims of the indubitable equivalent of the secured claims of such class.

Contrary to an "electing" class to which section 1111(b)(2) applies, the nonelecting class need not be protected with respect to any future appreciation in value of the collateral since the secured claim of such a class is never undersecured by reason of section 506(a). Thus the lien secures only the value of interest of such creditor in the collateral. To the extent deferred payments exceed that amount, they represent interest. In the event of a subsequent default, the portion of the face amount of deferred payments representing unaccrued interest will not be secured by the lien.

Subparagraph (B) applies to a dissenting class of unsecured claims. The court must confirm the plan notwithstanding the dissent of a class of impaired unsecured claims if the plan provides for such claims to receive property with a present value equal to the allowed amount of the claims. Unsecured claims may receive any kind of "property," which is used in its broadest sense, as long as the present value of the property given to the holders of unsecured claims is equal to the allowed amount of the claims. Some kinds of property, such as securities, may require difficult valuations by the court; in such circumstances the court need only determine that there is a reasonable likelihood that the property given the dissenting class of impaired unsecured claims equals the present value of such allowed claims.

Alternatively, under clause (ii), the court must confirm the plan if the plan provides that holders of any claims or interests junior to the interests of the dissenting class of impaired unsecured claims will not receive any property under the plan on account of such junior claims or interests. As long as senior creditors have not been paid more than in full, and classes of equal claims are being treated so that the dissenting class of impaired unsecured claims is not being discriminated against unfairly, the plan may be confirmed if the impaired class of unsecured claims receives less than 100 cents on the dollar (or nothing at all) as long as no class junior to the dissenting class receives anything at all. Such an impaired dissenting class may not prevent confirmation of a plan by objection merely because a senior class has elected to give up value to a junior class that is higher in priority than the impaired dissenting class of unsecured claims as long as the above safeguards are met.

Subparagraph (C) applies to a dissenting class of impaired interests. Such interests may include the interests of general or limited partners in a partnership, the interests of a sole proprietor in a proprietorship, or the interest of common or preferred stockholders in a corporation. If the holders of such interests are entitled to a fixed liquidation preference or fixed redemption price on account of such interests then the plan may be confirmed notwithstanding the dissent of such class of interests as long as it provides the holders property of a present value equal to the greatest of the fixed redemption price, or the value of such interests. In the event there is no fixed liquidation preference or redemption price, then the plan may be confirmed as long as it provides the holders of such interests property of a present value equal to the value of such interests. If the interests are "under water" then they will be valueless and the plan may be confirmed notwithstanding the dissent of that class of interests even if the plan provides that the holders of such interests will not receive any property on account of such interests.

Alternatively, under clause (ii), the court must confirm the plan notwithstanding the dissent of a class of interests if the plan provides that holders of any interests junior to the dissenting class of interests will not receive or retain any property on account of such junior interests. Clearly, if there are no junior interests junior to the class of dissenting interests, then the condition of clause (ii) is satisfied. The safeguards that no claim or interest receive more than 100 percent of the allowed amount of such claim or interest and that no class be discriminated against unfairly will insure that the plan is fair and equitable with respect to the dissenting class of interests.

Except to the extent of the treatment of secured claims under subparagraph (A) of this statement, the House report remains an accurate description of confirmation of section 1129(b). Contrary to the example contained in the Senate report, a senior class will not be able to give up value to a junior class over the dissent of an intervening class unless the intervening class receives the full amount, as opposed to value, of its claims or interests.

One last point deserves explanation with respect to the admittedly complex subject of confirmation. Section 1129(a)(7)(C) in effect exempts secured creditors making an election under section 1111(b)(2) from appli-

Case 1:13-cv-02211-RJS   Document 11   Filed 05/01/13   Page 38 of 53

cation of the best interest of creditors test. In the absence of an election the amount such creditors receive in a plan of liquidation would be the value of their collateral plus any amount recovered on the deficiency in the case of a recourse loan. However, under section 1111(b)(2), the creditors are given an allowed secured claim to the full extent the claim is allowed and have no unsecured deficiency. Since section 1129(b)(2)(A) makes clear that an electing class need receive payments of a present value only equal to the value of the collateral, it is conceivable that under such a "cram down" the electing creditors would receive nothing with respect to their deficiency. The advantage to the electing creditors is that they have a lien securing the full amount of the allowed claim so that if the value of the collateral increases after the case is closed, the deferred payments will be secured claims. Thus it is both reasonable and necessary to exempt such electing class from application of section 1129(a)(7) as a logical consequence of permitting election under section 1111(b)(2).

Section 1131 of the Senate amendment is deleted as unnecessary in light of the protection given a secured creditor under section 1129(b) of the House amendment.

Payment of taxes in reorganizations: Under the provisions of section 1141 as revised by the House amendment, an individual in reorganization under chapter 11 will not be discharged from any debt, including prepetition tax liabilities, which are nondischargeable under section 523. Thus, an individual debtor whose plan of reorganization is confirmed under chapter 11 will remain liable for prepetition priority taxes, as defined in section 507, and for tax liabilities which receive no priority but are nondischargeable under section 523, including no return, late return, and fraud liabilities.

In the case of a partnership or a corporation in reorganization under chapter 11 of title 11, section 1141(d)(1) of the House amendment adopts a provision limiting the taxes that must be provided for in a plan before a plan can be confirmed to taxes which receive priority under section 507. In addition, the House amendment makes dischargeable, in effect, tax liabilities attributable to no return, late return, or fraud situations. The amendment thus does not adopt a shareholder continuity test such as was contained in section 1141(d)(2)(A)(iii) of the Senate amendment. However, the House amendment amends section 1106, relating to duties of the trustee, to require the trustee to furnish, on request of a tax authority and without personal liability, information available to the trustee concerning potential prepetition tax liabilities for unfiled returns of the debtor. Depending on the condition of the debtor's books and records, this information may include schedules and files available to the business. The House amendment also does not prohibit a tax authority from disallowing any tax benefit claimed after the reorganization if the item originated in a deduction, credit, or other item improperly reported before the reorganization occurred. It may also be appropriate for the Congress to consider in the future imposing civil or criminal liability on corporate officers for preparing a false or fraudulent tax return. The House amendment also contemplates that the Internal Revenue Service will monitor the relief from liabilities under this provision and advise the Congress if, and to the extent, any significant tax abuse may be resulting from the provision.

Medium of payment of taxes: Federal, State, and local taxes incurred during the administration period of the estate, and during the "gap" period in an involuntary case, are to be paid solely in cash. Taxes relating to third priority wages are to be paid, under the general rules, in cash on the effective date of the plan, if the class has not accepted the plan, in an amount equal to the allowed amount of the claim. If the class has accepted the plan, the taxes must be paid in cash but the payments must be made at the time the wages are paid which may be paid in deferred periodic installments having a value, on the effective date of the plan, equal to the allowed amount of the tax claims. Prepetition taxes entitled to sixth priority under section 507(a)(6) also must be paid in cash, but the plan may also permit the debtor whether a corporation, partnership, or an individual, to pay the allowed taxes in installments over a period not to exceed 6 years following the date on which the tax authority assesses the tax liability, provided the value of the deferred payments representing principal and interest, as of the effective date of the plan, equals the allowed amount of the tax claim.

The House amendment also modifies the provisions of both bills dealing with the time when tax liabilities of a debtor in reorganization may be assessed by the tax authority. The House amendment follows the Senate amendment in deleting the limitation in present law under which a priority tax assessed after a reorganization plan is confirmed must be assessed within 1 year after the date of the filing of the petition. The House amendment specifies broadly that after the bankruptcy court determines the liability of the estate for a prepetition tax or for an administration period tax, the governmental unit may thereafter assess the tax against the estate, debtor, or successor to the debtor. The party to be assessed will, of course, depend on whether the case is under chapter 7, 11, or 13, whether the debtor is an individual, partnership, or a corporation, and whether the court is determining an individual debtor's personal liability for a nondischargeable tax. Assessment of the tax may only be made, however, within the limits of otherwise applicable law, such as the statute of limitations under the tax law.

Tax avoidance purpose: The House bill provided that no reorganization plan may be approved if the principal purpose of the plan is the avoidance of taxes. The Senate amendment modified the rule so that the bankruptcy court need make a determination of tax avoidance purpose only if it is asked to do so by the appropriate tax authority. Under the Senate amendment, if the tax authority does not request the bankruptcy court to rule on the purpose of the plan, the tax authority would not be barred from later asserting a tax avoidance motive with respect to allowance of a deduction or other tax benefit claimed after the reorganization. The House amendment adopts the substance of the Senate amendment, but does not provide a basis by which a tax authority may collaterally attack confirmation of a plan of reorganization other than under section 1144.

SENATE REPORT NO. 95–989

[Section 1130 (enacted as section 1129)] Subsection (a) enumerates the requirement governing confirmation of a plan. The court is required to confirm a plan if and only if all of the requirements are met.

Paragraph (1) requires that the plan comply with the applicable provisions of chapter 11, such as sections 1122 and 1123, governing classification and contents of plan.

Paragraph (2) requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure.

Paragraph (3) requires that the plan have been proposed in good faith, and not by any means forbidden by law.

Paragraph (4) is derived from section 221 of chapter X [section 621 of former title 11]. It requires that any payment made or promised by the proponent, the debtor, or person issuing securities or acquiring property under the plan, for services or for costs and expenses in, or in connection with the case, or in connection with the plan and incident to the case, be disclosed to the court. In addition, any payment made before confirmation must have been reasonable, and any payment to be fixed after confirmation must be subject to the approval of the court as reasonable.

Paragraph (5) is also derived from section 221 of chapter X [section 621 of former title 11]. It requires the plan to disclose the identity and affiliations of any individual proposed to serve, after confirmation, as a director, officer, or voting trustee of the reorganized debtor. The appointment to or continuance in one of these offices by the individual must be consistent with

the interests of creditors and equity security holders and with public policy. The plan must also disclose the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation to be paid to the insider.

Paragraph (6) permits confirmation only if any regulatory commission that will have jurisdiction over the debtor after confirmation of the plan has approved any rate change provided for in the plan. As an alternative, the rate change may be conditioned on such approval.

Paragraph (7) provides that in the case of a public company the court shall confirm the plan if it finds the plan to be fair and equitable and the plan either (1) has been accepted by classes of claims or interests as provided in section 1126, or (2), if not so accepted, satisfies the requirements of subsection (b) of this section.

Paragraphs (8) and (9) apply only in nonpublic cases. Paragraph (8) does not apply the fair and equitable standards in two situations. The first occurs if there is unanimous consent of all affected holders of claims and interests. It is also sufficient for purposes of confirmation if each holder of a claim or interest receives or retains consideration of a value, as of the effective date of the plan, that is not less than each would have or receive if the debtor were liquidated under chapter 7 of this title. This standard adapts the test of ''best interest of creditors'' as interpreted by the courts under chapter XI [chapter 11 of former title 11]. It is given broader application in chapter 11 of this title since a plan under chapter 11 may affect not only unsecured claims but secured claims and stock as well.

Under paragraph (9)(A), if a class of claims or interests has not accepted the plan, the court will confirm the plan if, for the dissenting class and any class of equal rank, the negotiated plan provides in value no less than under a plan that is fair and equitable. Such review and determination are not required for any other classes that accepted the plan.

Paragraph (9)(A) would permit a senior creditor to adjust his participation for the benefit of stockholders. In such a case, junior creditors, who have not been satisfied in full, may not object if, absent the ''give-up'', they are receiving all that a fair and equitable plan would give them. To illustrate, suppose the estate is valued at $1.5 million and claims and stock are:

| | Claims and stock (millions) | Equity (millions) |
|---|---|---|
| (1) Senior debt .................... | $1.2 | $1.2 |
| (2) Junior debt .................... | .5 | .3 |
| (3) Stock .......................... | (1) | .. |
| Total .............................. | 1.7 | 1.5 |

[1] No value.

Under the plan, the senior creditor gives up $100,000 in value for the benefit of stockholders as follows:

| | Millions |
|---|---|
| (1) Senior debt ............................................... | $1.1 |
| (2) Junior debt ............................................... | .3 |
| (3) Stock ...................................................... | .1 |
| Total ......................................................... | 1.5 |

If the junior creditors dissent, the court may nevertheless confirm the plan since under the fair and equitable standard they had an equity of only $300,000 and the allocation to equity security holders did not affect them.

Paragraph (9)(A) provides a special alternative with respect to secured claims. A plan may be confirmed against a dissenting class of secured claims if the plan or order of confirmation provides for the realization of their security (1) by the retention of the property subject to such security; (2) by a sale of the property and transfer of the claim to the proceeds of sale if the secured creditors were permitted to bid at the sale and set off against the purchase price up to the allowed amount of their claims; or (3) by such other method that will assure them the realization of the indubitable

equivalent of the allowed amount of their secured claims. The indubitable equivalent language is intended to follow the strict approach taken by Judge Learned Hand in *In Re Murel Holding Corp.* 75, F.2d 941 (2nd Cir. 1935).

Paragraph (9)(B) provides that, if a class of claims or interests is excluded from participation under the plan, the court may nevertheless confirm the plan if it determines that no class on a parity with or junior to such participates under the plan. In the previous illustration, no confirmation would be permitted if the negotiated plan would grant a participation to stockholders but nothing for junior creditors. As noted elsewhere, by reason of section 1126(g), an excluded class is a dissenting class under section 1130.

Paragraph (10) states that, to be confirmed, the plan must provide that each holder of a claim under section 507 will receive property, as therein noted, of a value equal to the allowed amount of the claim. There are two exceptions: (A) The holder thereof may agree to a different settlement in part or in whole; (B) where a debtor's business is reorganized under chapter 11, this provision requires that taxes entitled to priority (including administrative claims or taxes) must be paid in cash not later than 120 days after the plan is confirmed, unless the Secretary of the Treasury agrees to other terms or kinds of payment. The bill, as introduced, required full payment in cash within 60 days after the plan is confirmed.

Paragraph (11) requires a determination regarding feasibility of the plan. It is a slight elaboration of the law that has developed in the application of the word ''feasible'' in Chapter X of the present Act [chapter 10 of former title 11].

Paragraph (12) requires that at least one class must accept the plan, but any claims or interests held by insiders are not to be included for purposes of determining the number and amount of acceptances.

Subsection (b) provides that if, in the case of a public company, the plan meets the requirements of subsection (a) (except paragraphs (8) and (9) which do not apply to such a company), the court is to confirm the plan if the plan or the order of confirmation provides adequate protection for the realization of the value of the claims or interests of each class not accepting the plan. The intent is to incorporate inclusively, as a guide to the meaning of subsection (a) the provisions of section 216(7) ([former] 11 U.S.C. 616(7)) with respect to claims and section 216(8) ([former] 11 U.S.C. 616(8)) with respect to equity security interests.

Under subsection (c) the court may confirm only one plan, unless the order of confirmation has been revoked under section 1144. If the requirements for confirmation are met with respect to more than one plan, the court shall consider the preferences of creditors and stockholders in deciding which plan to confirm.

Subsection (d) provides that the bankruptcy court may not confirm a plan of reorganization if its principal purpose is the avoidance of taxes or the avoidance of section 5 of the Securities Act of 1933 (15 U.S.C. 77e). This rules modifies a similar provision of present law (section 269 of the Bankruptcy Act [section 669 of former title 11]).

HOUSE REPORT NO. 95–595

Paragraph (7) [of subsec. (a)] incorporates the former ''best interest of creditors'' test found in chapter 11, but spells out precisely what is intended. With respect to each class, the holders of the claims or interests of that class must receive or retain under the plan on account of those claims or interest property of a value, as of the effective date of the plan, that is not less than the amount that they would so receive or retain if the debtor were liquidated under chapter 7 on the effective date of the plan.

In order to determine the hypothetical distribution in a liquidation, the court will have to consider the various subordination provisions of proposed 11 U.S.C. 510, 726(a)(3), 726(a)(4), and the postponement provisions of proposed 11 U.S.C. 724. Also applicable in appropriate

cases will be the rules governing partnership distributions under proposed 11 U.S.C. 723, and distributions of community property under proposed 11 U.S.C. 726(c). Under subparagraph (A), a particular holder is permitted to accept less than liquidation value, but his acceptance does not bind the class.

Property under subparagraph (B) may include securities of the debtor. Thus, the provision will apply in cases in which the plan is confirmed under proposed 11 U.S.C. 1129(b).

Paragraph (8) is central to the confirmation standards. It requires that each class either have accepted the plan or be unimpaired.

Paragraph (9) augments the requirements of paragraph (8) by requiring payment of each priority claim in full. It permits payments over time and payment other than in cash, but payment in securities is not intended to be permitted without consent of the priority claimant even if the class has consented. It also permits a particular claimant to accept less than full payment.

Subsection (b) permits the court to confirm a plan notwithstanding failure of compliance with paragraph (8) of subsection (a). The plan must comply with all other paragraphs of subsection (a), including paragraph (9). This subsection contains the so-called cramdown. It requires simply that the plan meet certain standards of fairness to dissenting creditors or equity security holders. The general principle of the subsection permits confirmation notwithstanding nonacceptance by an impaired class if that class and all below it in priority are treated according to the absolute priority rule. The dissenting class must be paid in full before any junior class may share under the plan. If it is paid in full, then junior classes may share. Treatment of classes of secured creditors is slightly different because they do not fall in the priority ladder, but the principle is the same.

Specifically, the court may confirm a plan over the objection of a class of secured claims if the members of that class are unimpaired or if they are to receive under the plan property of a value equal to the allowed amount of their secured claims, as determined under proposed 11 U.S.C. 506(a). The property is to be valued as of the effective date of the plan, thus recognizing the time-value of money. As used throughout this subsection, "property" includes both tangible and intangible property, such as a security of the debtor or a successor to the debtor under a reorganization plan.

The court may confirm over the dissent of a class of unsecured claims, including priority claims, only if the members of the class are unimpaired, if they will receive under the plan property of a value equal to the allowed amount of their unsecured claims, or if no class junior will share under the plan. That is, if the class is impaired, then they must be paid in full or, if paid less than in full, then no class junior may receive anything under the plan. This codifies the absolute priority rule from the dissenting class on down.

With respect to classes of equity, the court may confirm over a dissent if the members of the class are unimpaired, if they receive their liquidation preference or redemption rights, if any, or if no class junior shares under the plan. This, too, is a codification of the absolute priority rule with respect to equity. If a partnership agreement subordinates limited partners to general partners to any degree, then the general principles of paragraph (3) of this subsection would apply to prevent the general partners from being squeezed out.

One requirement applies generally to all classes before the court may confirm under this subsection. No class may be paid more than in full.

The partial codification of the absolute priority rule here is not intended to deprive senior creditor of compensation for being required to take securities in the reorganized debtor that are of an equal priority with the securities offered to a junior class. Under current law, seniors are entitled to compensation for their loss of priority, and the increased risk put upon them by being required to give up their priority will be reflected in a lower value of the securities given to them than

the value of comparable securities given to juniors that have not lost a priority position.

Finally, the proponent must request use of this subsection. The court may not confirm notwithstanding nonacceptance unless the proponent requests and the court may then confirm only if subsection (b) is complied with. The court may not rewrite the plan.

A more detailed explanation follows:

The test to be applied by the court is set forth in the various paragraphs of section 1129(b). The elements of the test are new[,] departing from both the absolute priority rule and the best interests of creditors tests found under the Bankruptcy Act [former title 11]. The court is not permitted to alter the terms of the plan. It must merely decide whether the plan complies with the requirements of section 1129(b). If so, the plan is confirmed, if not the plan is denied confirmation.

The procedure followed is simple. The court examines each class of claims or interests designated under section 1123(a)(1) to see if the requirements of section 1129(b) are met. If the class is a class of secured claims, then paragraph (1) contains two tests that must be complied with in order for confirmation to occur. First, under subparagraph (A), the court must be able to find that the consideration given under the plan on account of the secured claim does not exceed the allowed amount of the claim. This condition is not prescribed as a matter of law under section 1129(a), because if the secured claim is compensated in securities of the debtor, a valuation of the business would be necessary to determine the value of the consideration. While section 1129(a) does not contemplate a valuation of the debtor's business, such a valuation will almost always be required under section 1129(b) in order to determine the value of the consideration to be distributed under the plan. Once the valuation is performed, it becomes a simple matter to impose the criterion that no claim will be paid more than in full.

Application of the test under subparagraph (A) also requires a valuation of the consideration "as of the effective date of the plan". This contemplates a present value analysis that will discount value to be received in the future; of course, if the interest rate paid is equivalent to the discount rate used, the present value and face future value will be identical. On the other hand, if no interest is proposed to be paid, the present value will be less than the face future value. For example, consider an allowed secured claim of $1,000 in a class by itself. One plan could propose to pay $1,000 on account of this claim as of the effective date of the plan. Another plan could propose to give a note with a $1,000 face amount due five years after the effective date of the plan on account of this claim. A third plan could propose to give a note in a face amount of $1,000 due five years from the effective date of the plan plus six percent annual interest commencing on the effective date of the plan on account of this claim. The first plan clearly meets the requirements of subparagraph (A) because the amount received on account of the second claim has an equivalent present value as of the effective date of the plan equal to the allowed amount of such claim.

The second plan also meets the requirements of subparagraph (A) because the present value of the five years note as of the effective date of the plan will never exceed the allowed amount of the secured claim; the higher the discount rate, the less present value the note will have. Whether the third plan complies with subparagraph (A) depends on whether the discount rate is less than six percent. Normally, the interest rate used in the plan will be prima facie evidence of the discount rate because the interest rate will reflect an arms length determination of the risk of the security involved and feasibility considerations will tend to understate interest payments. If the court found the discount rate to be greater than or equal to the interest rate used in the plan, then subparagraph (A) would be complied with because the value of the note as of the effective date of the plan would not exceed the allowed amount of the second claim. If, however, the court

found the discount rate to be less than the interest rate proposed under the plan, then the present value of the note would exceed $1,000 and the plan would fail of confirmation. On the other hand, it is important to recognize that the future principal amount of a note in excess of the allowed amount of a secured claim may have a present value less than such allowed amount, if the interest rate under the plan is correspondingly less than the discount rate.

Even if the requirements of subparagraph (A) are complied with, the class of secured claims must satisfy one of the three clauses in paragraph (B) in order to pass muster. It is sufficient for confirmation if the class has accepted the plan, or if the claims of the class are unimpaired, or if each holder of a secured claim in the class will receive property of a value as of the effective date of the plan equal to the allowed amount of such claim (unless he has agreed to accept less). It is important to note that under section 506(a), the allowed amount of the secured claim will not include any extent to which the amount of such claim exceeds the value of the property securing such claim. Thus, instead of focusing on secured creditors or unsecured creditors, the statute focuses on secured claims and unsecured claims.

After the court has applied paragraph (1) to each class of secured claims, it then applies paragraph (2) to each class of unsecured claims. Again two separate components must be tested. Subparagraph (A) is identical with the test under section 1129(b)(1)(A) insofar as the holder of an unsecured claim is not permitted to receive property of a value as of the effective date of the plan on account of such claim that is greater than the allowed amount of such claim. In addition, subparagraph (B) requires compliance with one of four conditions. The conditions in clauses (i)–(iii) mirror the conditions of acceptance unimpairment, or full value found in connection with secured claims in section 1129(b)(1)(B).

The condition contained in section 1129(b)(2)(B)(iv) provides another basis for confirming the plan with respect to a class of unsecured claims. It will be of greatest use when an impaired class that has not accepted the plan is to receive less than full value under the plan. The plan may be confirmed under clause (iv) in those circumstances if the class is not unfairly discriminated against with respect to equal classes and if junior classes will receive nothing under the plan. The second criterion is the easier to understand. It is designed to prevent a senior class from giving up consideration to a junior class unless every intermediate class consents, is paid in full, or is unimpaired. This gives intermediate creditors a great deal of leverage in negotiating with senior or secured creditors who wish to have a plan that gives value to equity. One aspect of this test that is not obvious is that whether one class is senior, equal, or junior to another class is relative and not absolute. Thus from the perspective of trade creditors holding unsecured claims, claims of senior and subordinated debentures may be entitled to share on an equal basis with the trade claims. However, from the perspective of the senior unsecured debt, the subordinated debentures are junior.

This point illustrates the lack of precision in the first criterion which demands that a class not be unfairly discriminated against with respect to equal classes. From the perspective of unsecured trade claims, there is no unfair discrimination as long as the total consideration given all other classes of equal rank does not exceed the amount that would result from an exact aliquot distribution. Thus if trade creditors, senior, and subordinate debt are each owed $100 and the plan proposes to pay the trade debt $15, the senior debt $30, and the junior debt $0, the plan would not unfairly discriminate against the trade debt nor would any other allocation of consideration under the plan between the senior and junior debt be unfair as to the trade debt as long as the aggregate consideration is less than $30. The senior debt could take $25 and give up $5 to the junior debt and the trade debt would have no cause to

complain because as far as it is concerned the junior debt is an equal class.

However, in this latter case the senior debt would have been unfairly discriminated against because the trade debt was being unfairly over-compensated; of course the plan would also fail unless the senior debt was unimpaired, received full value, or accepted the plan, because from its perspective a junior class received property under the plan. Application of the test from the perspective of senior debt is best illustrated by the plan that proposes to pay trade debt $15, senior debt $25, and junior debt $0. Here the senior debt is being unfairly discriminated against with respect to the equal trade debt even though the trade debt receives less than the senior debt. The discrimination arises from the fact that the senior debt is entitled to the rights of the junior debt which in this example entitle the senior debt to share on a 2:1 basis with the trade debt.

Finally, it is necessary to interpret the first criterion from the perspective of subordinated debt. The junior debt is subrogated to the rights of senior debt once the senior debt is paid in full. Thus, while the plan that pays trade debt $15, senior debt $25, and junior debt $0 is not unfairly discriminatory against the junior debt, a plan that proposes to pay trade debt $55, senior debt $100, and junior debt $1, would be unfairly discriminatory. In order to avoid discriminatory treatment against the junior debt, at least $10 would have to be received by such debt under those facts.

The criterion of unfair discrimination is not derived from the fair and equitable rule or from the best interests of creditors test. Rather it preserves just treatment of a dissenting class from the class's own perspective.

If each class of secured claims satisfies the requirements of section 1129(b)(1) and each class of unsecured claims satisfies the requirements of section 1129(b)(2), then the court must still see if each class of interests satisfies section 1129(b)(3) before the plan may be confirmed. Again, two separate criteria must be met. Under subparagraph (A) if the interest entitles the holder thereof to a fixed liquidation preference or if such interest may be redeemed at a fixed price, then the holder of such interest must not receive under the plan on account of such interest property of a value as of the effective date of the plan greater than the greater of these two values of the interest. Preferred stock would be an example of an interest likely to have liquidation preference or redemption price.

If an interest such as most common stock or the interest of a general partnership has neither a fixed liquidation preference nor a fixed redemption price, then the criterion in subparagraph (A) is automatically fulfilled. In addition subparagraph (B) contains five clauses that impose alternative conditions of which at least one must be satisfied in order to warrant confirmation. The first two clauses contain requirements of acceptance or unimpairment similar to the first two clauses in paragraphs (1)(B) and (2)(B). Clause (iii) is similar to the unimpairment test contained in section 1124(3)(B), except that it will apply to cover the issuance securities of the debtor of a value as of the effective date of the plan equal to the greater of any fixed liquidation preference or redemption price. The fourth clause allows confirmation if junior interests are not compensated under the plan and the fifth clause allows confirmation if there are no junior interests. These clauses recognized that as long as senior classes receive no more than full payment, the objection of a junior class will not defeat confirmation unless a class junior to it is receiving value under the plan and the objecting class is impaired. While a determination of impairment may be made under section 1124(3)(B)(iii) without a precise valuation of the business when common stock is clearly under water, once section 1129(b) is used, a more detailed valuation is a necessary byproduct. Thus, if no property is given to a holder of an interest under the plan, the interest should be clearly worthless in order to find unimpairment under section 1124(3)(B)(iii) and

section 1129(a)(8); otherwise, since a class of interests receiving no property is deemed to object under section 1126(g), the more precise valuation of section 1129(b) should be used.

If all of the requirements of section 1129(b) are complied with, then the court may confirm the plan subject to other limitations such as those found in section 1129(a) and (d).

Subsection (c) of section 1129 governs confirmation when more than one plan meets the requirements of the section. The court must consider the preferences of creditors and equity security holders in determining which plan to confirm.

Subsection (d) requires the court to deny confirmation if the principal purpose of the plan is the avoidance of taxes (through use of sections 346 and 1146, and applicable provisions of State law or the Internal Revenue Code [title 26] governing bankruptcy reorganizations) or the avoidance of section 5 of the Securities Act of 1933 [15 U.S.C. 77e] (through use of section 1145).

### REFERENCES IN TEXT

Section 5 of the Securities Act of 1933, referred to in subsec. (d), is classified to section 77e of Title 15, Commerce and Trade.

### AMENDMENTS

2010—Subsec. (a)(16). Pub. L. 111–327 substituted "under the plan" for "of the plan".

2005—Subsec. (a)(9)(A). Pub. L. 109–8, § 1502(a)(8)(A), substituted "507(a)(2) or 507(a)(3)" for "507(a)(1) or 507(a)(2)".

Subsec. (a)(9)(B). Pub. L. 109–8, § 1502(a)(8)(B), substituted "507(a)(1)" for "507(a)(3)".

Subsec. (a)(9)(C). Pub. L. 109–8, § 710(2), substituted "regular installment payments in cash—" and cls. (i) to (iii) for "deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim."

Subsec. (a)(9)(D). Pub. L. 109–8, § 710(1), (3), added subpar. (D).

Subsec. (a)(14). Pub. L. 109–8, § 213(1), added par. (14).

Subsec. (a)(15). Pub. L. 109–8, § 321(c)(1), added par. (15).

Subsec. (a)(16). Pub. L. 109–8, § 1221(b), added par. (16).

Subsec. (b)(2)(B)(ii). Pub. L. 109–8, § 321(c)(2), inserted before period at end ", except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section".

Subsec. (e). Pub. L. 109–8, § 438, added subsec. (e).

1994—Subsec. (a)(4). Pub. L. 103–394, § 501(d)(32)(A)(i), substituted period for semicolon at end.

Subsec. (a)(9)(B). Pub. L. 103–394, § 304(h)(7)(i), substituted ", 507(a)(6), or 507(a)(7)" for "or 507(a)(6)".

Subsec. (a)(9)(C). Pub. L. 103–394, § 304(h)(7)(ii), substituted "507(a)(8)" for "507(a)(7)".

Subsec. (a)(12). Pub. L. 103–394, § 501(d)(32)(A)(ii), inserted "of title 28" after "section 1930".

Subsec. (d). Pub. L. 103–394, § 501(d)(32)(B), struck out "(15 U.S.C. 77e)" after "Act of 1933".

1988—Subsec. (a)(13). Pub. L. 100–334 added par. (13).

1986—Subsec. (a)(7). Pub. L. 99–554, § 283(v)(1), struck out "of" after "to".

Subsec. (a)(9)(B). Pub. L. 99–554, § 283(v)(2), inserted reference to section 507(a)(6).

Subsec. (a)(9)(C). Pub. L. 99–554, § 283(v)(3), substituted "507(a)(7)" for "507(a)(6)".

Subsec. (a)(12). Pub. L. 99–554, § 225, added par. (12).

1984—Subsec. (a)(1), (2). Pub. L. 98–353, § 512(a)(1), (2), substituted "title" for "chapter".

Subsec. (a)(4). Pub. L. 98–353, § 512(a)(3), amended par. (4) generally. Prior to amendment, par. (4) read as follows: "(A) Any payment made or promised by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in, or in connection with, the case,

or in connection with the plan and incident to the case, has been disclosed to the court; and (B)(i) any such payment made before confirmation of the plan is reasonable; or (ii) if such payment is to be fixed after confirmation of the plan, such payment is subject to the approval of the court as reasonable."

Subsec. (a)(5)(A)(ii). Pub. L. 98–353, § 512(a)(4), substituted "; and" for the period at the end.

Subsec. (a)(5)(B). Pub. L. 98–353, § 512(a)(5), substituted "the" for "The".

Subsec. (a)(6). Pub. L. 98–353, § 512(a)(6), inserted "governmental" after "Any".

Subsec. (a)(7). Pub. L. 98–353, § 512(a)(7)(A), substituted "of each impaired class of claims or interests" for "each class".

Subsec. (a)(7)(B). Pub. L. 98–353, § 512(a)(7)(B), substituted "holder's" for "creditor's".

Subsec. (a)(8). Pub. L. 98–353, § 512(a)(8), inserted "of claims or interests" after "each class".

Subsec. (a)(10). Pub. L. 98–353, § 512(a)(9), substituted "If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider" for "At least one class of claims has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim of such class".

Subsec. (b)(2)(A)(i)(I), (ii). Pub. L. 98–353, § 512(b)(1), substituted "liens" for "lien" wherever appearing.

Subsec. (b)(2)(B)(ii). Pub. L. 98–353, § 512(b)(2), inserted "under the plan" after "retain".

Subsec. (b)(2)(C)(i). Pub. L. 98–353, § 512(b)(3), substituted "interest" for "claim", and "or the value" for "and the value".

Subsec. (d). Pub. L. 98–353, § 512(c), inserted "the application of" and provisions requiring that in any hearing under this subsection, the governmental unit has the burden of proof on the issue of avoidance.

### EFFECTIVE DATE OF 2005 AMENDMENT

Amendment by section 1221(b) of Pub. L. 109–8 applicable to cases pending under this title on Apr. 20, 2005, or filed under this title on or after Apr. 20, 2005, with certain exceptions, see section 1221(d) of Pub. L. 109–8, set out as a note under section 363 of this title.

Amendment by sections 213(1), 321(c), 438, 710, and 1502(a)(8) of Pub. L. 109–8 effective 180 days after Apr. 20, 2005, and not applicable with respect to cases commenced under this title before such effective date, except as otherwise provided, see section 1501 of Pub. L. 109–8, set out as a note under section 101 of this title.

### EFFECTIVE DATE OF 1994 AMENDMENT

Amendment by Pub. L. 103–394 effective Oct. 22, 1994, and not applicable to cases commenced under this title before Oct. 22, 1994, see section 702 of Pub. L. 103–394, set out as a note under section 101 of this title.

### EFFECTIVE DATE OF 1988 AMENDMENT

Amendment by Pub. L. 100–334 effective June 16, 1988, but not applicable to cases commenced under this title before that date, see section 4 of Pub. L. 100–334, set out as an Effective Date note under section 1114 of this title.

### EFFECTIVE DATE OF 1986 AMENDMENT

Effective date and applicability of amendment by section 225 of Pub. L. 99–554 dependent upon the judicial district involved, see section 302(d), (e) of Pub. L. 99–554, set out as a note under section 581 of Title 28, Judiciary and Judicial Procedure.

Amendment by section 283 of Pub. L. 99–554 effective 30 days after Oct. 27, 1986, see section 302(a) of Pub. L. 99–554.

### EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section

552(a) of Pub. L. 98–353, set out as a note under section 101 of this title.

## SUBCHAPTER III—POSTCONFIRMATION MATTERS

### § 1141. Effect of confirmation

(a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.

(d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—

(A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not—

(i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;

(ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan; and

(B) terminates all rights and interests of equity security holders and general partners provided for by the plan.

(2) A discharge under this chapter does not discharge a debtor who is an individual from any debt excepted from discharge under section 523 of this title.

(3) The confirmation of a plan does not discharge a debtor if—

(A) the plan provides for the liquidation of all or substantially all of the property of the estate;

(B) the debtor does not engage in business after consummation of the plan; and

(C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

(4) The court may approve a written waiver of discharge executed by the debtor after the order for relief under this chapter.

(5) In a case in which the debtor is an individual—

(A) unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan;

(B) at any time after the confirmation of the plan, and after notice and a hearing, the court may grant a discharge to the debtor who has not completed payments under the plan if—

(i) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 on such date;

(ii) modification of the plan under section 1127 is not practicable; and

(iii) subparagraph (C) permits the court to grant a discharge; and

(C) the court may grant a discharge if, after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that—

(i) section 522(q)(1) may be applicable to the debtor; and

(ii) there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B);

and if the requirements of subparagraph (A) or (B) are met.

(6) Notwithstanding paragraph (1), the confirmation of a plan does not discharge a debtor that is a corporation from any debt—

(A) of a kind specified in paragraph (2)(A) or (2)(B) of section 523(a) that is owed to a domestic governmental unit, or owed to a person as the result of an action filed under subchapter III of chapter 37 of title 31 or any similar State statute; or

(B) for a tax or customs duty with respect to which the debtor—

(i) made a fraudulent return; or

(ii) willfully attempted in any manner to evade or to defeat such tax or such customs duty.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2638; Pub. L. 98–353, title III, §513, July 10, 1984, 98 Stat. 387; Pub. L. 109–8, title III, §§321(d), 330(b), title VII, §708, Apr. 20, 2005, 119 Stat. 95, 101, 126; Pub. L. 111–327, §2(a)(36), Dec. 22, 2010, 124 Stat. 3561.)

HISTORICAL AND REVISION NOTES

LEGISLATIVE STATEMENTS

Section 1141(d) of the House amendment is derived from a comparable provision contained in the Senate amendment. However, section 1141(d)(2) of the House amendment is derived from the House bill as preferable to the Senate amendment. It is necessary for a corporation or partnership undergoing reorganization to be able to present its creditors with a fixed list of liabilities upon which the creditors or third parties can make intelligent decisions. Retaining an exception for discharge with respect to nondischargeable taxes would leave an undesirable uncertainty surrounding reorganizations that is unacceptable. Section 1141(d)(3) is derived from the Senate amendment. Section 1141(d)(4) is likewise derived from the Senate amendment.

SENATE REPORT NO. 95–989

Subsection (a) of this section makes the provisions of a confirmed plan binding on the debtor, any entity is-

Subsec. (b)(5). Pub. L. 98–353, §445(b)(6), substituted ''such claim'' for ''the claim'' and struck out the comma after ''petition''.

Pub. L. 98–353, §445(b)(4), redesignated par. (6) as (5). Former par. (5) redesignated (4).

Subsec. (b)(6). Pub. L. 98–353, §445(b)(4), redesignated par. (7) as (6). Former par. (6) redesignated (5).

Subsec. (b)(7). Pub. L. 98–353, §445(b)(7)(A), inserted ''the claim of an employee'' before ''for damages''.

Pub. L. 98–353, §445(b)(4), redesignated par. (8) as (7). Former par. (7) redesignated (6).

Subsec. (b)(7)(A)(i). Pub. L. 98–353, §445(b)(7)(B), substituted ''or'' for ''and''.

Subsec. (b)(7)(B). Pub. L. 98–353, §445(b)(7)(C), (D), substituted ''any'' for ''the'' and inserted a comma after ''such contract''.

Subsec. (b)(8), (9). Pub. L. 98–353, §445(b)(4), redesignated par. (9) as (8). Former par. (8) redesignated (7).

Subsec. (c)(1). Pub. L. 98–353, §445(c)(1), inserted ''the'' before ''fixing'' and substituted ''administration'' for ''closing''.

Subsec. (c)(2). Pub. L. 98–353, §445(c)(2), inserted ''right to payment arising from a'' after ''any'' and struck out ''if such breach gives rise to a right to payment'' after ''breach of performance''.

Subsec. (e)(1). Pub. L. 98–353, §445(d)(1), (2), in provisions preceding subpar. (A) substituted '', (b), and (c)'' for ''and (b)'' and substituted ''or has secured'' for '', or has secured,''.

Subsec. (e)(1)(B). Pub. L. 98–353, §445(d)(3), inserted ''or disallowance'' after ''allowance''.

Subsec. (e)(1)(C). Pub. L. 98–353, §445(d)(4), substituted ''asserts a right of subrogation to the rights of such creditor'' for ''requests subrogation'' and struck out ''to the rights of such creditor'' after ''of this title''.

Subsec. (h). Pub. L. 98–353, §445(e), substituted ''522'' for ''522(i)''.

Subsec. (j). Pub. L. 98–353, §445(f), amended subsec. (j) generally, inserting provisions relating to reconsideration of a disallowed claim, and provisions relating to reconsideration of a claim under this subsection.

EFFECTIVE DATE OF 1994 AMENDMENT

Amendment by Pub. L. 103–394 effective Oct. 22, 1994, and not applicable with respect to cases commenced under this title before Oct. 22, 1994, see section 702 of Pub. L. 103–394, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by section 257 of Pub. L. 99–554 effective 30 days after Oct. 27, 1986, but not applicable to cases commenced under this title before that date, see section 302(a), (c)(1) of Pub. L. 99–554, set out as a note under section 581 of Title 28, Judiciary and Judicial Procedure.

Amendment by section 283 of Pub. L. 99–554 effective 30 days after Oct. 27, 1986, see section 302(a) of Pub. L. 99–554.

EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a) of Pub. L. 98–353, set out as a note under section 101 of this title.

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in sections 101, 106, 346, 501, 503, 506, 507, 509, 510, 522, 544, 723, 727, 901, 929, 944, 1111, 1114, 1126, 1141, 1228, 1305, 1328 of this title.

## § 503. Allowance of administrative expenses

(a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

(B) any tax—

(i) incurred by the estate, except a tax of a kind specified in section 507(a)(8) of this title; or

(ii) attributable to an excessive allowance of a tentative carryback adjustment that the estate received, whether the taxable year to which such adjustment relates ended before or after the commencement of the case; and

(C) any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph;

(2) compensation and reimbursement awarded under section 330(a) of this title;

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

(A) a creditor that files a petition under section 303 of this title;

(B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;

(C) a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;

(E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian; or

(F) a member of a committee appointed under section 1102 of this title, if such expenses are incurred in the performance of the duties of such committee;

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;

(5) reasonable compensation for services rendered by an indenture trustee in making a substantial contribution in a case under chapter 9 or 11 of this title, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title; and

(6) the fees and mileage payable under chapter 119 of title 28.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2581; Pub. L. 98–353, title III, §446, July 10, 1984, 98 Stat. 374;

Pub. L. 99–554, title II, § 283(g), Oct. 27, 1986, 100 Stat. 3117; Pub. L. 103–394, title I, § 110, title II, § 213(c), title III, § 304(h)(2), Oct. 22, 1994, 108 Stat. 4113, 4126, 4134.)

### HISTORICAL AND REVISION NOTES

#### LEGISLATIVE STATEMENTS

Section 503(a) of the House amendment represents a compromise between similar provisions in the House bill and the Senate amendment by leaving to the Rules of Bankruptcy Procedure the determination of the location at which a request for payment of an administrative expense may be filed. The preamble to section 503(b) of the House bill makes a similar change with respect to the allowance of administrative expenses.

Section 503(b)(1) adopts the approach taken in the House bill as modified by some provisions contained in the Senate amendment. The preamble to section 503(b) makes clear that none of the paragraphs of section 503(b) apply to claims or expenses of the kind specified in section 502(f) that arise in the ordinary course of the debtor's business or financial affairs and that arise during the gap between the commencement of an involuntary case and the appointment of a trustee or the order for relief, whichever first occurs. The remainder of section 503(b) represents a compromise between H.R. 8200 as passed by the House and the Senate amendments. Section 503(b)(3)(E) codifies present law in cases such as *Randolph v. Scruggs*, 190 U.S. 533, which accords administrative expense status to services rendered by a pre-petition custodian or other party to the extent such services actually benefit the estate. Section 503(b)(4) of the House amendment conforms to the provision contained in H.R. 8200 as passed by the House and deletes language contained in the Senate amendment providing a different standard of compensation under section 330 of that amendment.

#### SENATE REPORT NO. 95–989

Subsection (a) of this section permits administrative expense claimants to file with the court a request for payment of an administrative expense. The Rules of Bankruptcy Procedure will specify the time, the form, and the method of such a filing.

Subsection (b) specifies the kinds of administrative expenses that are allowable in a case under the bankruptcy code. The subsection is derived mainly from section 64a(1) of the Bankruptcy Act [section 104(a)(1) of former title 11], with some changes. The actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the order for relief, and any taxes on, measured by, or withheld from such wages, salaries, or commissions, are allowable as administrative expenses.

In general, administrative expenses include taxes which the trustee incurs in administering the debtor's estate, including taxes on capital gains from sales of property by the trustee and taxes on income earned by the estate during the case. Interest on tax liabilities and certain tax penalties incurred by the trustee are also included in this first priority.

Taxes which the Internal Revenue Service may find due after giving the trustee a so-called "quickie" tax refund and later doing an audit of the refund are also payable as administrative expenses. The tax code [title 26] permits the trustee of an estate which suffers a net operating loss to carry back the loss against an earlier profit year of the estate or of the debtor and to obtain a tentative refund for the earlier year, subject, however, to a later full audit of the loss which led to the refund. The bill, in effect, requires the Internal Revenue Service to issue a tentative refund to the trustee (whether the refund was applied for by the debtor or by the trustee), but if the refund later proves to have been erroneous in amount, the Service can request that the tax attributable to the erroneous refund be payable by the estate as an administrative expense.

Postpetition payments to an individual debtor for services rendered to the estate are administrative expenses, and are not property of the estate when received by the debtor. This situation would most likely arise when the individual was a sole proprietor and was employed by the estate to run the business after the commencement of the case. An individual debtor in possession would be so employed, for example. See *Local Loan v. Hunt*, 292 U.S. 234, 243 (1943).

Compensation and reimbursement awarded officers of the estate under section 330 are allowable as administrative expenses. Actual, necessary expenses, other than compensation of a professional person, incurred by a creditor that files an involuntary petition, by a creditor that recovers property for the benefit of the estate, by a creditor that acts in connection with the prosecution of a criminal offense relating to the case, by a creditor, indenture, trustee, equity security holder, or committee of creditors or equity security holders (other than official committees) that makes a substantial contribution to a reorganization or municipal debt adjustment case, or by a superseded custodian, are all allowable administrative expenses. The phrase "substantial contribution in the case" is derived from Bankruptcy Act §§ 242 and 243 [sections 642 and 643 of former title 11]. It does not require a contribution that leads to confirmation of a plan, for in many cases, it will be a substantial contribution if the person involved uncovers facts that would lead to a denial of confirmation, such as fraud in connection with the case.

Paragraph (4) permits reasonable compensation for professional services rendered by an attorney or an accountant of an equity whose expense is compensable under the previous paragraph. Paragraph (5) permits reasonable compensation for an indenture trustee in making a substantial contribution in a reorganization or municipal debt adjustment case. Finally, paragraph (6) permits witness fees and mileage as prescribed under chapter 119 [§ 2041 et seq.] of title 28.

#### AMENDMENTS

1994—Subsec. (a). Pub. L. 103–394, § 213(c), inserted "timely" after "may" and ", or may tardily file such request if permitted by the court for cause" before period at end.

Subsec. (b)(1)(B)(i). Pub. L. 103–394, § 304(h)(2), substituted "507(a)(8)" for "507(a)(7)".

Subsec. (b)(3)(F). Pub. L. 103–394, § 110, added subpar. (F).

1986—Subsec. (b)(1)(B)(i). Pub. L. 99–554, § 283(g)(1), substituted "507(a)(7)" for "507(a)(6)".

Subsec. (b)(5). Pub. L. 99–554, § 283(g)(2), inserted "and" after "title;".

Subsec. (b)(6). Pub. L. 99–554, § 283(g)(3), substituted a period for "; and".

1984—Subsec. (b). Pub. L. 98–353, § 446(1), struck out the comma after "be allowed" in provisions preceding par. (1).

Subsec. (b)(1)(C). Pub. L. 98–353, § 446(2), struck out the comma after "credit".

Subsec. (b)(2). Pub. L. 98–353, § 446(3), inserted "(a)" after "330".

Subsec. (b)(3). Pub. L. 98–353, § 446(4), inserted a comma after "paragraph (4) of this subsection".

Subsec. (b)(3)(C). Pub. L. 98–353, § 446(5), struck out the comma after "case".

Subsec. (b)(5). Pub. L. 98–353, § 446(6), struck out "and" after "title;".

Subsec. (b)(6). Pub. L. 98–353, § 446(7), substituted "; and" for period at end.

#### EFFECTIVE DATE OF 1994 AMENDMENT

Amendment by Pub. L. 103–394 effective Oct. 22, 1994, and not applicable with respect to cases commenced under this title before Oct. 22, 1994, see section 702 of Pub. L. 103–394, set out as a note under section 101 of this title.

#### EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by Pub. L. 99–554 effective 30 days after Oct. 27, 1986, see section 302(a) of Pub. L. 99–554, set out

as a note under section 581 of Title 28, Judiciary and Judicial Procedure.

Effective Date of 1984 Amendment

Amendment by Pub. L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a) of Pub. L. 98–353, set out as a note under section 101 of this title.

Section Referred to in Other Sections

This section is referred to in sections 106, 346, 348, 361, 364, 365, 504, 507, 557, 726, 901, 922, 1114, 1205, 1226, 1228, 1326 of this title; title 26 section 1398.

## §504. Sharing of compensation

(a) Except as provided in subsection (b) of this section, a person receiving compensation or reimbursement under section 503(b)(2) or 503(b)(4) of this title may not share or agree to share—

(1) any such compensation or reimbursement with another person; or

(2) any compensation or reimbursement received by another person under such sections.

(b)(1) A member, partner, or regular associate in a professional association, corporation, or partnership may share compensation or reimbursement received under section 503(b)(2) or 503(b)(4) of this title with another member, partner, or regular associate in such association, corporation, or partnership, and may share in any compensation or reimbursement received under such sections by another member, partner, or regular associate in such association, corporation, or partnership.

(2) An attorney for a creditor that files a petition under section 303 of this title may share compensation and reimbursement received under section 503(b)(4) of this title with any other attorney contributing to the services rendered or expenses incurred by such creditor's attorney.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2582.)

Historical and Revision Notes

Senate Report No. 95–989

Section 504 prohibits the sharing of compensation, or fee splitting, among attorneys, other professionals, or trustees. The section provides only two exceptions: partners or associates in the same professional association, partnership, or corporation may share compensation inter se; and attorneys for petitioning creditors that join in a petition commencing an involuntary case may share compensation.

Section Referred to in Other Sections

This section is referred to in section 901 of this title; title 15 section 78fff.

## §505. Determination of tax liability

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated

by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title; or

(B) any right of the estate to a tax refund, before the earlier of—

(i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or

(ii) a determination by such governmental unit of such request.

(b) A trustee may request a determination of any unpaid liability of the estate for any tax incurred during the administration of the case by submitting a tax return for such tax and a request for such a determination to the governmental unit charged with responsibility for collection or determination of such tax. Unless such return is fraudulent, or contains a material misrepresentation, the trustee, the debtor, and any successor to the debtor are discharged from any liability for such tax—

(1) upon payment of the tax shown on such return, if—

(A) such governmental unit does not notify the trustee, within 60 days after such request, that such return has been selected for examination; or

(B) such governmental unit does not complete such an examination and notify the trustee of any tax due, within 180 days after such request or within such additional time as the court, for cause, permits;

(2) upon payment of the tax determined by the court, after notice and a hearing, after completion by such governmental unit of such examination; or

(3) upon payment of the tax determined by such governmental unit to be due.

(c) Notwithstanding section 362 of this title, after determination by the court of a tax under this section, the governmental unit charged with responsibility for collection of such tax may assess such tax against the estate, the debtor, or a successor to the debtor, as the case may be, subject to any otherwise applicable law.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2582; Pub. L. 98–353, title III, §447, July 10, 1984, 98 Stat. 374.)

Historical and Revision Notes

Legislative Statements

Section 505 of the House amendment adopts a compromise position with respect to the determination of tax liability from the position taken in H.R. 8200 as passed by the House and in the Senate amendment.

Determinations of tax liability: Authority of bankruptcy court to rule on merits of tax claims.—The House amendment authorizes the bankruptcy court to rule on the merits of any tax claim involving an unpaid tax, fine, or penalty relating to a tax, or any addition to a tax, of the debtor or the estate. This authority applies, in general, whether or not the tax, penalty, fine, or addition to tax had been previously assessed or paid. However, the bankruptcy court will not have jurisdiction to rule on the merits of any tax claim which has been previously adjudicated, in a contested proceeding, before a court of competent jurisdiction. For this purpose, a proceeding in the U.S. Tax Court is to be considered "contested" if the debtor filed a petition in the Tax Court by the commencement of the case and the Internal Revenue Service had filed an answer to the petition. Therefore, if a petition and answer were filed in

AMENDMENTS

2005—Subsec. (b)(9). Pub. L. 109–8, §716(d), inserted '', and except that in a case under chapter 13, a claim of a governmental unit for a tax with respect to a return filed under section 1308 shall be timely if the claim is filed on or before the date that is 60 days after the date on which such return was filed as required'' before period at end.

Subsec. (g). Pub. L. 109–8, §910(b), designated existing provisions as par. (1) and added par. (2).

Subsec. (k). Pub. L. 109–8, §201(a), added subsec. (k).

1994—Subsec. (b)(9). Pub. L. 103–394, §213(a), added par. (9).

Subsec. (i). Pub. L. 103–394, §304(h)(1), substituted ''507(a)(8)'' for ''507(a)(7)''.

1986—Subsec. (b)(6)(A)(ii). Pub. L. 99–554, §283(f)(1), substituted ''repossessed'' for ''repossesed''.

Subsec. (g). Pub. L. 99–554, §257(j), inserted reference to chapter 12.

Subsec. (i). Pub. L. 99–554, §283(f)(2), substituted ''507(a)(7)'' for ''507(a)(6)''.

1984—Subsec. (a). Pub. L. 98–353, §445(a), inserted ''general'' before ''partner''.

Subsec. (b). Pub. L. 98–353, §445(b)(1), (2), in provisions preceding par. (1), inserted ''(e)(2),'' after ''subsections'' and ''in lawful currency of the United States'' after ''claim''.

Subsec. (b)(1). Pub. L. 98–353, §445(b)(3), substituted ''and'' for '', and unenforceable against''.

Subsec. (b)(3). Pub. L. 98–353, §445(b)(5), inserted ''the'' after ''exceeds''.

Pub. L. 98–353, §445(b)(4), struck out par. (3) ''such claim may be offset under section 553 of this title against a debt owing to the debtor;'', and redesignated par. (4) as (3).

Subsec. (b)(4). Pub. L. 98–353, §445(b)(4), redesignated par. (5) as 4. Former par. (4) redesignated (3).

Subsec. (b)(5). Pub. L. 98–353, §445(b)(6), substituted ''such claim'' for ''the claim'' and struck out the comma after ''petition''.

Pub. L. 98–353, §445(b)(4), redesignated par. (6) as (5). Former par. (5) redesignated (4).

Subsec. (b)(6). Pub. L. 98–353, §445(b)(4), redesignated par. (7) as (6). Former par. (6) redesignated (5).

Subsec. (b)(7). Pub. L. 98–353, §445(b)(7)(A), inserted ''the claim of an employee'' before ''for damages''.

Pub. L. 98–353, §445(b)(4), redesignated par. (8) as (7). Former par. (7) redesignated (6).

Subsec. (b)(7)(A)(i). Pub. L. 98–353, §445(b)(7)(B), substituted ''or'' for ''and''.

Subsec. (b)(7)(B). Pub. L. 98–353, §445(b)(7)(C), (D), substituted ''any'' for ''the'' and inserted a comma after ''such contract''.

Subsec. (b)(8), (9). Pub. L. 98–353, §445(b)(4), redesignated par. (9) as (8). Former par. (8) redesignated (7).

Subsec. (c)(1). Pub. L. 98–353, §445(c)(1), inserted ''the'' before ''fixing'' and substituted ''administration'' for ''closing''.

Subsec. (c)(2). Pub. L. 98–353, §445(c)(2), inserted ''right to payment arising from a'' after ''any'' and struck out ''if such breach gives rise to a right to payment'' after ''breach of performance''.

Subsec. (e)(1). Pub. L. 98–353, §445(d)(1), (2), in provisions preceding subpar. (A) substituted '', (b), and (c)'' for ''and (b)'' and substituted ''or has secured'' for '', or has secured,''.

Subsec. (e)(1)(B). Pub. L. 98–353, §445(d)(3), inserted ''or disallowance'' after ''allowance''.

Subsec. (e)(1)(C). Pub. L. 98–353, §445(d)(4), substituted ''asserts a right of subrogation to the rights of such creditor'' for ''requests subrogation'' and struck out ''to the rights of such creditor'' after ''of this title''.

Subsec. (h). Pub. L. 98–353, §445(e), substituted ''522'' for ''522(i)''.

Subsec. (j). Pub. L. 98–353, §445(f), amended subsec. (j) generally, inserting provisions relating to reconsideration of a disallowed claim, and provisions relating to reconsideration of a claim under this subsection.

EFFECTIVE DATE OF 2005 AMENDMENT

Amendment by Pub. L. 109–8 effective 180 days after Apr. 20, 2005, and not applicable with respect to cases commenced under this title before such effective date, except as otherwise provided, see section 1501 of Pub. L. 109–8, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1994 AMENDMENT

Amendment by Pub. L. 103–394 effective Oct. 22, 1994, and not applicable with respect to cases commenced under this title before Oct. 22, 1994, see section 702 of Pub. L. 103–394, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by section 257 of Pub. L. 99–554 effective 30 days after Oct. 27, 1986, but not applicable to cases commenced under this title before that date, see section 302(a), (c)(1) of Pub. L. 99–554, set out as a note under section 581 of Title 28, Judiciary and Judicial Procedure.

Amendment by section 283 of Pub. L. 99–554 effective 30 days after Oct. 27, 1986, see section 302(a) of Pub. L. 99–554.

EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a) of Pub. L. 98–353, set out as a note under section 101 of this title.

§ 503. Allowance of administrative expenses

(a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate including—

(i) wages, salaries, and commissions for services rendered after the commencement of the case; and

(ii) wages and benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation of Federal or State law by the debtor, without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees, or of nonpayment of domestic support obligations, during the case under this title;

(B) any tax—

(i) incurred by the estate, whether secured or unsecured, including property taxes for which liability is in rem, in personam, or both, except a tax of a kind specified in section 507(a)(8) of this title; or

(ii) attributable to an excessive allowance of a tentative carryback adjustment that the estate received, whether the taxable year to which such adjustment relates ended before or after the commencement of the case;

(C) any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph; and

(D) notwithstanding the requirements of subsection (a), a governmental unit shall not be required to file a request for the payment of an expense described in subparagraph (B) or (C), as a condition of its being an allowed administrative expense;

(2) compensation and reimbursement awarded under section 330(a) of this title;

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

(A) a creditor that files a petition under section 303 of this title;

(B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;

(C) a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;

(E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian; or

(F) a member of a committee appointed under section 1102 of this title, if such expenses are incurred in the performance of the duties of such committee;

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;

(5) reasonable compensation for services rendered by an indenture trustee in making a substantial contribution in a case under chapter 9 or 11 of this title, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title;

(6) the fees and mileage payable under chapter 119 of title 28;

(7) with respect to a nonresidential real property lease previously assumed under section 365, and subsequently rejected, a sum equal to all monetary obligations due, excluding those arising from or relating to a failure to operate or a penalty provision, for the period of 2 years following the later of the rejection date or the date of actual turnover of the premises, without reduction or setoff for any reason whatsoever except for sums actually received or to be received from an entity other than the debtor, and the claim for remaining sums due for the balance of the term of the lease shall be a claim under section 502(b)(6);

(8) the actual, necessary costs and expenses of closing a health care business incurred by a trustee or by a Federal agency (as defined in section 551(1) of title 5) or a department or agency of a State or political subdivision thereof, including any cost or expense incurred—

(A) in disposing of patient records in accordance with section 351; or

(B) in connection with transferring patients from the health care business that is in the process of being closed to another health care business; and

(9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

(c) Notwithstanding subsection (b), there shall neither be allowed, nor paid—

(1) a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtor's business, absent a finding by the court based on evidence in the record that—

(A) the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;

(B) the services provided by the person are essential to the survival of the business; and

(C) either—

(i) the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or

(ii) if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred;

(2) a severance payment to an insider of the debtor, unless—

(A) the payment is part of a program that is generally applicable to all full-time employees; and

(B) the amount of the payment is not greater than 10 times the amount of the mean severance pay given to nonmanagement employees during the calendar year in which the payment is made; or

(3) other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2581; Pub. L. 98–353, title III, § 446, July 10, 1984, 98 Stat. 374; Pub. L. 99–554, title II, § 283(g), Oct. 27, 1986, 100 Stat. 3117; Pub. L. 103–394, title I, § 110, title II, § 213(c), title III, § 304(h)(2), Oct. 22, 1994, 108 Stat. 4113, 4126, 4134; Pub. L. 109–8, title III, §§ 329, 331, title IV, § 445, title VII, § 712(b), (c), title XI, § 1103, title XII, §§ 1208, 1227(b), Apr. 20, 2005, 119 Stat. 101, 102, 117, 128, 190, 194, 200.)

### HISTORICAL AND REVISION NOTES

#### LEGISLATIVE STATEMENTS

Section 503(a) of the House amendment represents a compromise between similar provisions in the House bill and the Senate amendment by leaving to the Rules of Bankruptcy Procedure the determination of the location at which a request for payment of an administrative expense may be filed. The preamble to section 503(b) of the House bill makes a similar change with respect to the allowance of administrative expenses.

Section 503(b)(1) adopts the approach taken in the House bill as modified by some provisions contained in the Senate amendment. The preamble to section 503(b) makes clear that none of the paragraphs of section 503(b) apply to claims or expenses of the kind specified in section 502(f) that arise in the ordinary course of the debtor's business or financial affairs and that arise during the gap between the commencement of an involuntary case and the appointment of a trustee or the order for relief, whichever first occurs. The remainder of section 503(b) represents a compromise between H.R. 8200 as passed by the House and the Senate amendments. Section 503(b)(3)(E) codifies present law in cases such as *Randolph v. Scruggs*, 190 U.S. 533, which accords administrative expense status to services rendered by a pre-petition custodian or other party to the extent such services actually benefit the estate. Section 503(b)(4) of the House amendment conforms to the provision contained in H.R. 8200 as passed by the House and deletes language contained in the Senate amendment providing a different standard of compensation under section 330 of that amendment.

#### SENATE REPORT NO. 95–989

Subsection (a) of this section permits administrative expense claimants to file with the court a request for payment of an administrative expense. The Rules of Bankruptcy Procedure will specify the time, the form, and the method of such a filing.

Subsection (b) specifies the kinds of administrative expenses that are allowable in a case under the bankruptcy code. The subsection is derived mainly from section 64a(1) of the Bankruptcy Act [section 104(a)(1) of former title 11], with some changes. The actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the order for relief, and any taxes on, measured by, or withheld from such wages, salaries, or commissions, are allowable as administrative expenses.

In general, administrative expenses include taxes which the trustee incurs in administering the debtor's estate, including taxes on capital gains from sales of property by the trustee and taxes on income earned by the estate during the case. Interest on tax liabilities and certain tax penalties incurred by the trustee are also included in this first priority.

Taxes which the Internal Revenue Service may find due after giving the trustee a so-called "quickie" tax refund and later doing an audit of the refund are also payable as administrative expenses. The tax code [title 26] permits the trustee of an estate which suffers a net operating loss to carry back the loss against an earlier profit year of the estate or of the debtor and to obtain a tentative refund for the earlier year, subject, however, to a later full audit of the loss which led to the refund. The bill, in effect, requires the Internal Revenue Service to issue a tentative refund to the trustee (whether the refund was applied for by the debtor or by the trustee), but if the refund later proves to have been erroneous in amount, the Service can request that the tax attributable to the erroneous refund be payable by the estate as an administrative expense.

Postpetition payments to an individual debtor for services rendered to the estate are administrative expenses, and are not property of the estate when received by the debtor. This situation would most likely arise when the individual was a sole proprietor and was employed by the estate to run the business after the commencement of the case. An individual debtor in possession would be so employed, for example. See *Local Loan v. Hunt*, 292 U.S. 234, 243 (1943).

Compensation and reimbursement awarded officers of the estate under section 330 are allowable as administrative expenses. Actual, necessary expenses, other than compensation of a professional person, incurred by a creditor that files an involuntary petition, by a creditor that recovers property for the benefit of the estate, by a creditor that acts in connection with the prosecution of a criminal offense relating to the case, by a creditor, indenture, trustee, equity security holder, or committee of creditors or equity security holders (other than official committees) that makes a substantial contribution to a reorganization or municipal debt adjustment case, or by a superseded custodian, are all allowable administrative expenses. The phrase "substantial contribution in the case" is derived from Bankruptcy Act §§ 242 and 243 [sections 642 and 643 of former title 11]. It does not require a contribution that leads to confirmation of a plan, for in many cases, it will be a substantial contribution if the person involved uncovers facts that would lead to a denial of confirmation, such as fraud in connection with the case.

Paragraph (4) permits reasonable compensation for professional services rendered by an attorney or an accountant of an equity whose expense is compensable under the previous paragraph. Paragraph (5) permits reasonable compensation for an indenture trustee in making a substantial contribution in a reorganization or municipal debt adjustment case. Finally, paragraph (6) permits witness fees and mileage as prescribed under chapter 119 [§ 2041 et seq.] of title 28.

#### AMENDMENTS

2005—Subsec. (b)(1)(A). Pub. L. 109–8, § 329, amended subpar. (A) generally. Prior to amendment, subpar. (A) read as follows: "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;".

Subsec. (b)(1)(B)(i). Pub. L. 109–8, § 712(b), inserted "whether secured or unsecured, including property taxes for which liability is in rem, in personam, or both," before "except".

Subsec. (b)(1)(D). Pub. L. 109–8, § 712(c), added subpar. (D).

Subsec. (b)(4). Pub. L. 109–8, § 1208, inserted "subparagraph (A), (B), (C), (D), or (E) of" before "paragraph (3)".

Subsec. (b)(7). Pub. L. 109–8, § 445, added par. (7).

Subsec. (b)(8). Pub. L. 109–8, § 1103, added par. (8).

Subsec. (b)(9). Pub. L. 109–8, § 1227(b), added par. (9).

Subsec. (c). Pub. L. 109–8, § 331, added subsec. (c).

1994—Subsec. (a). Pub. L. 103–394, § 213(c), inserted "timely" after "may" and ", or may tardily file such request if permitted by the court for cause" before period at end.

Subsec. (b)(1)(B)(i). Pub. L. 103–394, § 304(h)(2), substituted "507(a)(8)" for "507(a)(7)".

Subsec. (b)(3)(F). Pub. L. 103–394, § 110, added subpar. (F).

1986—Subsec. (b)(1)(B)(i). Pub. L. 99–554, § 283(g)(1), substituted "507(a)(7)" for "507(a)(6)".

Subsec. (b)(5). Pub. L. 99–554, § 283(g)(2), inserted "and" after "title;".

Subsec. (b)(6). Pub. L. 99–554, § 283(g)(3), substituted a period for "; and".

1984—Subsec. (b). Pub. L. 98–353, § 446(1), struck out the comma after "be allowed" in provisions preceding par. (1).

Subsec. (b)(1)(C). Pub. L. 98–353, § 446(2), struck out the comma after ''credit''.

Subsec. (b)(2). Pub. L. 98–353, § 446(3), inserted ''(a)'' after ''330''.

Subsec. (b)(3). Pub. L. 98–353, § 446(4), inserted a comma after ''paragraph (4) of this subsection''.

Subsec. (b)(3)(C). Pub. L. 98–353, § 446(5), struck out the comma after ''case''.

Subsec. (b)(5). Pub. L. 98–353, § 446(6), struck out ''and'' after ''title;''.

Subsec. (b)(6). Pub. L. 98–353, § 446(7), substituted ''; and'' for period at end.

EFFECTIVE DATE OF 2005 AMENDMENT

Amendment by Pub. L. 109–8 effective 180 days after Apr. 20, 2005, and not applicable with respect to cases commenced under this title before such effective date, except as otherwise provided, see section 1501 of Pub. L. 109–8, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1994 AMENDMENT

Amendment by Pub. L. 103–394 effective Oct. 22, 1994, and not applicable with respect to cases commenced under this title before Oct. 22, 1994, see section 702 of Pub. L. 103–394, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by Pub. L. 99–554 effective 30 days after Oct. 27, 1986, see section 302(a) of Pub. L. 99–554, set out as a note under section 581 of Title 28, Judiciary and Judicial Procedure.

EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a) of Pub. L. 98–353, set out as a note under section 101 of this title.

## § 504. Sharing of compensation

(a) Except as provided in subsection (b) of this section, a person receiving compensation or reimbursement under section 503(b)(2) or 503(b)(4) of this title may not share or agree to share—

(1) any such compensation or reimbursement with another person; or

(2) any compensation or reimbursement received by another person under such sections.

(b)(1) A member, partner, or regular associate in a professional association, corporation, or partnership may share compensation or reimbursement received under section 503(b)(2) or 503(b)(4) of this title with another member, partner, or regular associate in such association, corporation, or partnership, and may share in any compensation or reimbursement received under such sections by another member, partner, or regular associate in such association, corporation, or partnership.

(2) An attorney for a creditor that files a petition under section 303 of this title may share compensation and reimbursement received under section 503(b)(4) of this title with any other attorney contributing to the services rendered or expenses incurred by such creditor's attorney.

(c) This section shall not apply with respect to sharing, or agreeing to share, compensation with a bona fide public service attorney referral program that operates in accordance with non-Federal law regulating attorney referral services and with rules of professional responsibility applicable to attorney acceptance of referrals.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2582; Pub. L. 109–8, title III, § 326, Apr. 20, 2005, 119 Stat. 99.)

HISTORICAL AND REVISION NOTES

SENATE REPORT NO. 95–989

Section 504 prohibits the sharing of compensation, or fee splitting, among attorneys, other professionals, or trustees. The section provides only two exceptions: partners or associates in the same professional association, partnership, or corporation may share compensation inter se; and attorneys for petitioning creditors that join in a petition commencing an involuntary case may share compensation.

AMENDMENTS

2005—Subsec. (c). Pub. L. 109–8 added subsec. (c).

EFFECTIVE DATE OF 2005 AMENDMENT

Amendment by Pub. L. 109–8 effective 180 days after Apr. 20, 2005, and not applicable with respect to cases commenced under this title before such effective date, except as otherwise provided, see section 1501 of Pub. L. 109–8, set out as a note under section 101 of this title.

## § 505. Determination of tax liability

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title;

(B) any right of the estate to a tax refund, before the earlier of—

(i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or

(ii) a determination by such governmental unit of such request; or

(C) the amount or legality of any amount arising in connection with an ad valorem tax on real or personal property of the estate, if the applicable period for contesting or redetermining that amount under any law (other than a bankruptcy law) has expired.

(b)(1)(A) The clerk shall maintain a list under which a Federal, State, or local governmental unit responsible for the collection of taxes within the district may—

(i) designate an address for service of requests under this subsection; and

(ii) describe where further information concerning additional requirements for filing such requests may be found.

(B) If such governmental unit does not designate an address and provide such address to the clerk under subparagraph (A), any request made under this subsection may be served at the address for the filing of a tax return or protest with the appropriate taxing authority of such governmental unit.

(2) A trustee may request a determination of any unpaid liability of the estate for any tax incurred during the administration of the case by submitting a tax return for such tax and a re-

HISTORICAL AND REVISION NOTES

LEGISLATIVE STATEMENTS

Section 102 specifies various rules of construction but is not exclusive. Other rules of construction that are not set out in title 11 are nevertheless intended to be followed in construing the bankruptcy code. For example, the phrase "on request of a party in interest" or a similar phrase, is used in connection with an action that the court may take in various sections of the Code. The phrase is intended to restrict the court from acting sua sponte. Rules of bankruptcy procedure or court decisions will determine who is a party in interest for the particular purposes of the provision in question, but the court will not be permitted to act on its own.

Although "property" is not construed in this section, it is used consistently throughout the code in its broadest sense, including cash, all interests in property, such as liens, and every kind of consideration including promises to act or forbear to act as in section 548(d).

Section 102(1) expands on a rule of construction contained in H.R. 8200 as passed by the House and in the Senate amendment. The phrase "after notice and a hearing", or a similar phrase, is intended to be construed according to the particular proceeding to mean after such notice as is appropriate in the particular circumstances, and such opportunity, if any, for a hearing as is appropriate in the particular circumstances. If a provision of title 11 authorizes an act to be taken "after notice and a hearing" this means that if appropriate notice is given and no party to whom such notice is sent timely requests a hearing, then the act sought to be taken may be taken without an actual hearing.

In very limited emergency circumstances, there will be insufficient time for a hearing to be commenced before an action must be taken. The action sought to be taken may be taken if authorized by the court at an ex parte hearing of which a record is made in open court. A full hearing after the fact will be available in such an instance.

In some circumstances, such as under section 1128, the bill requires a hearing and the court may act only after a hearing is held. In those circumstances the judge will receive evidence before ruling. In other circumstances, the court may take action "after notice and a hearing," if no party in interest requests a hearing. In that event a court order authorizing the action to be taken is not necessary as the ultimate action taken by the court implies such an authorization.

Section 102(8) is new. It contains a rule of construction indicating that a definition contained in a section in title 11 that refers to another section of title 11 does not, for the purposes of such reference, take the meaning of a term used in the other section. For example, section 522(a)(2) defines "value" for the purposes of section 522. Section 548(d)(2) defines "value" for purposes of section 548. When section 548 is incorporated by reference in section 522, this rule of construction makes clear that the definition of "value" in section 548 governs its meaning in section 522 notwithstanding a different definition of "value" in section 522(a)(2).

SENATE REPORT NO. 95–989

Section 102 provides seven rules of construction. Some are derived from current law; others are derived from 1 U.S.C. 1; a few are new. They apply generally throughout proposed title 11. These are terms that are not appropriate for definition, but that require an explanation.

Paragraph (1) defines the concept of "after notice and a hearing." The concept is central to the bill and to the separation of the administrative and judicial functions of bankruptcy judges. The phrase means after such notice as is appropriate in the particular circumstances (to be prescribed by either the Rules of Bankruptcy Procedure or by the court in individual circumstances that the Rules do not cover. In many cases, the Rules will provide for combined notice of several proceed-

ings), and such opportunity for a hearing as is appropriate in the particular circumstances. Thus, a hearing will not be necessary in every instance. If there is no objection to the proposed action, the action may go ahead without court action. This is a significant change from present law, which requires the affirmative approval of the bankruptcy judge for almost every action. The change will permit the bankruptcy judge to stay removed from the administration of the bankruptcy or reorganization case, and to become involved only when there is a dispute about a proposed action, that is, only when there is an objection. The phrase "such opportunity for a hearing as is appropriate in the particular circumstances" is designed to permit the Rules and the courts to expedite or dispense with hearings when speed is essential. The language "or similar phrase" is intended to cover the few instances in the bill where "after notice and a hearing" is interrupted by another phrase, such as "after notice to the debtor and a hearing."

Paragraph (2) specifies that "claim against the debtor" includes claim against property of the debtor. This paragraph is intended to cover nonrecourse loan agreements where the creditor's only rights are against property of the debtor, and not against the debtor personally. Thus, such an agreement would give rise to a claim that would be treated as a claim against the debtor personally, for the purposes of the bankruptcy code.

Paragraph (3) is a codification of *American Surety Co. v. Marotta*, 287 U.S. 513 (1933). It specifies that "includes" and "including" are not limiting.

Paragraph (4) specifies that "may not" is prohibitive and not permissive (such as in "might not").

Paragraph (5) specifies that "or" is not exclusive. Thus, if a party "may do (a) or (b)", then the party may do either or both. The party is not limited to a mutually exclusive choice between the two alternatives.

Paragraph (6) makes clear that "order for relief" means entry of an order for relief. If the court orally orders relief, but the order is not entered until a later time, then any time measurements in the bill are from entry, not from the oral order. In a voluntary case, the entry of the order for relief is the filing of the petition commencing the voluntary case.

Paragraph (7) specifies that the singular includes the plural. The plural, however, generally does not include the singular. The bill uses only the singular, even when the item in question most often is found in plural quantities, in order to avoid the confusion possible if both rules of construction applied. When an item is specified in the plural, the plural is intended.

AMENDMENTS

1986—Par. (9). Pub. L. 99–554 added par. (9).

1984—Par. (8). Pub. L. 98–353 substituted "contained" for "continued".

EFFECTIVE DATE OF 1986 AMENDMENT

Effective date and applicability of amendment by Pub. L. 99–554 dependent upon the judicial district involved, see section 302(d), (e) of Pub. L. 99–554, set out as a note under section 581 of Title 28, Judiciary and Judicial Procedure.

EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a) of Pub. L. 98–353, set out as a note under section 101 of this title.

§ 103. Applicability of chapters

(a) Except as provided in section 1161 of this title, chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title, and this chapter, sections 307, 362(*o*), 555 through 557, and 559 through 562 apply in a case under chapter 15.

(b) Subchapters I and II of chapter 7 of this title apply only in a case under such chapter.

(c) Subchapter III of chapter 7 of this title applies only in a case under such chapter concerning a stockbroker.

(d) Subchapter IV of chapter 7 of this title applies only in a case under such chapter concerning a commodity broker.

(e) SCOPE OF APPLICATION.—Subchapter V of chapter 7 of this title shall apply only in a case under such chapter concerning the liquidation of an uninsured State member bank, or a corporation organized under section 25A of the Federal Reserve Act, which operates, or operates as, a multilateral clearing organization pursuant to section 409 of the Federal Deposit Insurance Corporation Improvement Act of 1991.

(f) Except as provided in section 901 of this title, only chapters 1 and 9 of this title apply in a case under such chapter 9.

(g) Except as provided in section 901 of this title, subchapters I, II, and III of chapter 11 of this title apply only in a case under such chapter.

(h) Subchapter IV of chapter 11 of this title applies only in a case under such chapter concerning a railroad.

(i) Chapter 13 of this title applies only in a case under such chapter.

(j) Chapter 12 of this title applies only in a case under such chapter.

(k) Chapter 15 applies only in a case under such chapter, except that—

(1) sections 1505, 1513, and 1514 apply in all cases under this title; and

(2) section 1509 applies whether or not a case under this title is pending.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2555; Pub. L. 97–222, § 2, July 27, 1982, 96 Stat. 235; Pub. L. 98–353, title III, § 423, July 10, 1984, 98 Stat. 369; Pub. L. 99–554, title II, § 252, Oct. 27, 1986, 100 Stat. 3104; Pub. L. 106–554, § 1(a)(5) [title I, § 112(c)(5)(A)], Dec. 21, 2000, 114 Stat. 2763, 2763A–394; Pub. L. 109–8, title VIII, § 802(a), Apr. 20, 2005, 119 Stat. 145; Pub. L. 111–327, § 2(a)(2), Dec. 22, 2010, 124 Stat. 3557.)

HISTORICAL AND REVISION NOTES

SENATE REPORT NO. 95–989

Section 103 prescribes which chapters of the proposed bankruptcy code apply in various cases. All cases, other than cases ancillary to foreign proceedings, are filed under chapter 7, 9, 11, or 13, the general chapters of the proposed bankruptcy code. The general provisions that apply no matter which chapter a case is filed under are found in chapters 1, 3, and 5. Subsection (a) makes this explicit, with an exception for chapter 9. The other provisions, which are self-explanatory, provide the special rules for Stockbroker Liquidations, Commodity Broker Liquidations, Municipal Debt Adjustments, and Railroad Reorganizations.

REFERENCES IN TEXT

Section 25A of the Federal Reserve Act, referred to in subsec. (e), popularly known as the Edge Act, is classified to subchapter II (§ 611 et seq.) of chapter 6 of Title 12, Banks and Banking. For complete classification of this Act to the Code, see Short Title note set out under section 611 of Title 12 and Tables.

Section 409 of the Federal Deposit Insurance Corporation Improvement Act of 1991, referred to in subsec. (e), is classified to section 4422 of Title 12, Banks and Banking.

AMENDMENTS

2010—Subsec. (a). Pub. L. 111–327 substituted "362(o)" for "362(n)".

2005—Subsec. (a). Pub. L. 109–8, § 802(a)(1), inserted ", and this chapter, sections 307, 362(n), 555 through 557, and 559 through 562 apply in a case under chapter 15" before period.

Subsec. (k). Pub. L. 109–8, § 802(a)(2), added subsec. (k).

2000—Subsecs. (e) to (j). Pub. L. 106–554 added subsec. (e) and redesignated former subsecs. (e) to (i) as (f) to (j), respectively.

1986—Subsec. (a). Pub. L. 99–554, § 252(1), inserted reference to chapter 12.

Subsec. (i). Pub. L. 99–554, § 252(2), added subsec. (i).

1984—Subsec. (c). Pub. L. 98–353 substituted "stockbroker" for "stockholder".

1982—Subsec. (d). Pub. L. 97–222 struck out "except with respect to section 746(c) which applies to margin payments made by any debtor to a commodity broker or forward contract merchant" after "concerning a commodity broker".

EFFECTIVE DATE OF 2005 AMENDMENT

Amendment by Pub. L. 109–8 effective 180 days after Apr. 20, 2005, and not applicable with respect to cases commenced under this title before such effective date, except as otherwise provided, see section 1501 of Pub. L. 109–8, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by Pub. L. 99–554 effective 30 days after Oct. 27, 1986, but not applicable to cases commenced under this title before that date, see section 302(a), (c)(1) of Pub. L. 99–554, set out as a note under section 581 of Title 28, Judiciary and Judicial Procedure.

EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a) of Pub. L. 98–353, set out as a note under section 101 of this title.

§ 104. Adjustment of dollar amounts

(a) On April 1, 1998, and at each 3-year interval ending on April 1 thereafter, each dollar amount in effect under sections 101(3), 101(18), 101(19A), 101(51D), 109(e), 303(b), 507(a), 522(d), 522(f)(3) and 522(f)(4), 522(n), 522(p), 522(q), 523(a)(2)(C), 541(b), 547(c)(9), 707(b), 1322(d), 1325(b), and 1326(b)(3) of this title and section 1409(b) of title 28 immediately before such April 1 shall be adjusted—

(1) to reflect the change in the Consumer Price Index for All Urban Consumers, published by the Department of Labor, for the most recent 3-year period ending immediately before January 1 preceding such adjustment; and

(2) to round to the nearest $25 the dollar amount that represents such change.

(b) Not later than March 1, 1998, and at each 3-year interval ending on March 1 thereafter, the Judicial Conference of the United States shall publish in the Federal Register the dollar amounts that will become effective on such April 1 under sections 101(3), 101(18), 101(19A), 101(51D), 109(e), 303(b), 507(a), 522(d), 522(f)(3) and 522(f)(4), 522(n), 522(p), 522(q), 523(a)(2)(C), 541(b), 547(c)(9), 707(b), 1322(d), 1325(b), and 1326(b)(3) of this title and section 1409(b) of title 28.

(c) Adjustments made in accordance with subsection (a) shall not apply with respect to cases commenced before the date of such adjustments.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2555; Pub. L. 103–394, title I, § 108(e), Oct. 22, 1994, 108 Stat.